CERTAIN UNDERWRITERS AT LLOYDS' and Marine Insurance Companies Signatories To Certificates of Insurance Nos. C7064/102226 and C7064/102227, Plaintiffs-Appellants,

v.

BARBER BLUE SEA LINE and Harrington & Company, Inc., jointly and severally, Defendants-Appellees.

No. 81–5082.

United States Court of Appeals, Eleventh Circuit.

May 6, 1982.

Batchelor, Brodnax, Guthrie, Armstrong & Freyer, Timothy J. Armstrong, Alvaro L. Mejer, Miami, Fla., for plaintiffs-appellants.

Smathers & Thompson, Henry H. Bolz, III, G. Morton Good, Miami, Fla., for defendants-appellees.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The plaintiffs appeal from an adverse judgment entered by the district court sit-

ting in admiralty.[1] After trial the court found that the limitation of liability specified in the Carriage of Goods by Sea Act [COGSA], 46 U.S.C.A. §§ 1300–1315, barred the plaintiffs from recovering the full value of 14 cartons of cargo lost in the Port of Miami.[2] The district court found the defendants Barber Blue Sea Line and Harrington & Company, Inc., liable to the extent of $500 per carton, a total of $7,000. We affirm the district court's judgment.

In mid-August 1978 Barber Blue Sea Line issued two clean on board bills of lading for 45 cartons of cameras and one carton of advertising material for shipment on two vessels from Yokohama, Japan, to Miami, Florida. Photo America was the Miami consignee. Harrington & Company, Inc., was Barber Blue's Miami agent for stevedoring, storage, handling, and delivery of the cargo. In mid-September the two vessels arrived. Harrington notified the consignee, unloaded the ships, and took the cargo to Shed "B" on Dodge Island, Port of Miami. Within ten days Harrington delivered 32 of the 46 cartons to the consignee's trucker. The remaining 14 cartons, all from the shipment of one vessel, were never found. The value of the lost cargo was $35,544.98.

The underwriters paid the consignee and sued Barber Blue and Harrington for the full value of the lost cargo.

The dispute at trial was over the correct interpretation of the limitation of liability clauses in the bill of lading issued on the cargo subsequently lost in the Port of Miami. Barber Blue and Harrington contended that the carrier's liability limits, clearly governed by COGSA, extended to Harrington as terminal operator and freight handler through the provision which allows an agent or independent contractor "to avail himself of the defenses and limits of liability which the Carrier is entitled to invoke under this contract." [3]

The district court made three key findings regarding Barber Blue's obligations

1. 28 U.S.C.A. § 1333. The court alternatively found jurisdiction in diversity. 28 U.S.C.A. § 1332.

2. 46 U.S.C.A. § 1304(5) provides in pertinent part:
   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package * * *.

3. The relevant portions of the bill of lading are as follows:
   2. In the bill of lading the word "Carrier" includes the shipowner, and any of its employees, agents, or contractors. (See Clause 6)....
   6. Sub-contracting. Defenses of Servants. (See Clause 10.)
   (1) The carrier shall be entitled to substitute any vessel or other means of transport and to subcontract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the goods.
   (2) For the purpose of this contract and subject to the provisions in this B/L, the Carrier shall be responsible for the acts and omissions of any person of whose services he makes use for the performance of the contract of carriage evidenced by this document.

   (3) If an action for loss or damage of goods is brought against any insurer, servant, agent or independent contractor, or subcontractor, including stevedores, carpenters and watchmen, such person shall be entitled to avail himself of the defenses and limits of liability which the Carrier is entitled to invoke under this contract. For the purpose of this clause, all such persons are party to the contract, made on their behalf by the Carrier.
   7. Carrier's Liability.
   (b) . . . The provisions of said Act [COGSA] or law (except as otherwise specifically provided herein) shall also govern before the shipment is loaded on and after it is discharged from the vessel while the shipment is in the custody and possession of the Carrier.
   10. Package Limitation.
   Where goods are received by the Carrier break-bulk, the Carrier's liability shall be limited to $500 per carton, bundle, skid, pallet, or other unit, except when the Shipper declares Ad Valorem value herein and pays additional freight, as above.
   15. Responsibility.
   (a) Port-to-Port shipments.
   Carrier shall be liable for the goods as Carrier from the time the goods are received by the Carrier at the Port of Loading (Box 12) until they are delivered to port authorities or the Consignee or the on-carrier at the Port of Discharge (Box 13).

under the contract of carriage. First, Barber Blue was obligated to deliver the cargo to the consignee in Miami. The court relied in part on Barber Blue's liability for delivery of the goods "as Carrier" under the bill of lading (Clause 15), and on the undisputed evidence that the Port of Miami is a non-operating entity. Barber could not possibly have delivered the goods to the port authorities. Second, the court found that Barber Blue hired Harrington to perform all functions necessary to complete Barber Blue's contract of carriage by delivering the cargo to the consignee. The court relied on the evidence of agreements between Barber Blue and Harrington and the testimony of Harrington's president. Third, the court found that Harrington was acting as the agent of Barber Blue "for the purpose of effecting delivery of the cameras to the tailgate of the consignee's trucks" at the time the cargo was lost.

Referring to the bill of lading and these findings, the court concluded that Clause 6(3) clearly expressed an intent to extend the benefits of the bill of lading to Harrington as independent contractor and agent of Barber Blue and that Harrington was entitled to the same defenses and limits of liability as Barber Blue. Consequently, the district court limited the defendants' liability to $500 per carton.

On appeal the underwriters argue that the benefits of COGSA limitation of liability may only be extended to parties specifically identified in the bill of lading. The underwriters argue that the language in the bill is not specific enough to extend COGSA benefits to Harrington at the time the cargo was lost because Harrington was acting in the capacity of terminal operator. Finally, the underwriters argue that, even if the language extended to Harrington as terminal operator, Harrington at this point could not take advantage of Barber Blue's

limitation of liability because Harrington had accepted the shipment in the capacity as agent for the Port Authority and therefore was no longer Barber Blue's agent or independent contractor under the bill.

The benefits of the Carriage of Goods by Sea Act do not automatically extend to agents and contractors of the carrier. The Supreme Court in *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 302, 79 S.Ct. 766, 769, 3 L.Ed.2d 820 (1959), found "nothing in the provisions, legislative history and environment of the Act" to indicate any intention "to limit the liability of negligent agents of the carrier." In addition, the negligent stevedore in that case was neither a party to nor a beneficiary of the contract of carriage and therefore could not claim a contractual limitation of liability. The former Fifth Circuit in a more recent case allowed a negligent stevedore to claim COGSA limitation of liability when the bill of lading specifically extended all of the carrier's available defenses to "the Carrier's agents, servants and employees and ... any independent contractor performing any of the Carrier's obligations under the contract of carriage." *Secrest Machine Corp. v. S.S. Tiber*, 450 F.2d 285, 286 (5th Cir. 1971).[4] Holding that "a carrier is free to contract with the owner or consignee of cargo to limit the liability of the carrier's agents," the court concluded that the term "independent contractor" included stevedores.

Bill of lading provisions which extend defenses and protections to the carrier's agents and contractors are known in admiralty law as Himalaya clauses.[5] In the context of COGSA limitation of liability, Himalaya clauses must be "strictly construed and limited to intended beneficiaries." *Robert C. Herd, supra*, 359 U.S. at 305, 79 S.Ct. at 771. The clause itself must express the understanding of the contract-

4. The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit as its governing body of precedent. This precedent is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

5. The term derives from an English case involving the vessel HIMALAYA. *See Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415, 417 n.5 (5th Cir. 1981), for a discussion of its origin.

ing parties through "the clarity of the language used." *Id.* The "clarity of language" requirement does not mean, however, that COGSA benefits extend only to parties specifically enumerated in the bill of lading. It is sufficient that the terms express a clear intent to extend benefits to a well-defined class of readily identifiable persons. When a bill refers to a class of persons such as "agents" and "independent contractors" it is clear that the contract includes all those persons engaged by the carrier to perform the functions and duties of the carrier within the scope of the carriage contract. No further degree of clarity is necessary. *See Secrest Machine Corp. v. S.S. Tiber, supra; Bernard Screen Printing Corp. v. Meyer Lines,* 464 F.2d 934 (2d Cir. 1972).

On this appeal the underwriters contend that while "agents" and "independent contractors" may include Harrington as stevedore they do not include Harrington as terminal operator. The plaintiffs argue that at the time the cargo was lost Harrington had completed all duties connected with Barber Blue's carriage of goods and had taken on the independent status of terminal operator. As terminal operator, Harrington was independently responsible for the delivery of the goods to the consignee.

The underwriters rely on *La Salle Machine Tool, Inc. v. Maher Terminals, Inc.,* 611 F.2d 56 (4th Cir. 1979), for this proposition, but that reliance is misplaced. While the Fourth Circuit affirmed the terminal operator's liability in *La Salle,* the damage to the goods in that case occurred while the defendant was unloading the shipper's truck and before the carrier had become responsible for the shipment. The terminal operator was not acting as the agent of the carrier but of the shipper. The bill of lading did not include the damaged goods, was not incorporated in the shipper's dock receipt, and did not in any event extend COGSA benefits to the shipper's agents. Because the facts of *La Salle* differ substantially from the facts of this case, that holding does not support the plaintiffs' argument.

Moreover, the underwriters do not offer a persuasive reason as to why we should reject the district court's finding that Barber Blue was obligated to deliver the cargo to the consignee and that it remained liable under the bill of lading up until the time the cargo was loaded on the consignee's trucks. There is nothing in the bill of lading or in the record of this case to suggest that Barber Blue could deliver the goods to some third party other than the consignee. The testimony was undisputed that Barber Blue could not have delivered the cargo to the Port Authority. While Harrington is in a contractual relationship with the Port, that relationship only extends to the use of Port facilities and the collection of fees. The underwriters have not pointed to anything which makes Harrington the Port's agent for delivery of cargo.

Because Barber Blue was obligated to deliver the cargo to the consignee in Miami, and because the bill of lading expresses a clear intent to extend COGSA benefits to Harrington as Barber's independent contractor, the findings of the district court were not clearly erroneous. The judgment of that court adverse to plaintiffs-appellants is AFFIRMED.