**Assicurazioni GENERALI,**
**Plaintiff/Appellant**

v.

**D'AMICO and Harrington & Company,**
**Inc., jointly and severally,**
**Defendants/Appellees.**

**No. 84–5743.**

United States Court of Appeals,
Eleventh Circuit.

July 23, 1985.

Alvaro L. Mejer, Armstrong & Mejer, P.A., Coral Gables, Fla., for plaintiff/appellant.

Mark D. Greenberg, Thomas B. Bourque, Stinson, Lyons & Schuette, P.A., Allan R. Kelley, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for defendants/appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and THOMAS\*, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

This is an appeal from a summary judgment entered by the United States District Court for the Southern District of Florida limiting defendants, D'Amico and Harrington & Co., Inc., liability to $500 per carton under the Carriage of Goods by Sea Act, 46 U.S.C. § 1304(5), as incorporated into D'Amico's bill of lading. We affirm.

On January 24, 1984, D'Amico, an ocean carrier, issued a bill of lading covering two packages containing water demineralizing equipment. In consideration for an agreed freight, D'Amico contracted with the ship-

---

\* Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

per to transport and carry the cargo from Genoa, Italy, to Miami, Florida. The consignee, Cristalum Transamerica Corporation, insured the two packages with Assicurazioni. On February 12, 1983, D'Amico's vessel arrived in Miami and the packages were offloaded by Harrington & Co., Inc. which had been engaged by D'Amico to provide stevedoring and terminal operator services. The two packages were stored in Harrington's warehouse facility for eighteen days, until March 1, 1983, at which time the consignee arrived to take delivery. As Harrington was loading the cargo onto the consignee's truck, one package fell and its contents damaged. Harrington admitted negligence in the damage to the cargo. The consignee then notified its insurer of its claim for cargo damage. As insurer, Assicurazioni paid the consignee for said damage and became subrogated to the rights of the insured consignee. Assicurazioni then brought this action in Admiralty pursuant to 28 U.S.C. § 1333.

The bill of lading under which the cargo was shipped provided that the rights and liabilities of the parties to the bill of lading would be governed by the Carriage of Goods by Sea Act, 46 U.S.C. § 1301, *et seq.,* (COGSA). Coverage under COGSA was extended by the terms of the bill of lading to the point of delivery to the consignee and the $500 per package limitation of liability provision, 46 U.S.C. § 1304(5), expressly reiterated. The bill of lading also contained a "Himalaya" clause which purported to extend all limitations provided by law or by the terms of the bill of lading to any party adjudged a carrier and/or bailee of the cargo.

The District Court found that, although Harrington did not fit within the definition of "carrier" as set forth in the bill of lading, Harrington could benefit from the limitation of liability provisions contained in D'Amico's bill of lading and COGSA, 46 U.S.C. § 1304(5), due to the fact that Harrington was adjudged to be a bailee of the subject cargo. The District Court found Harrington liable for the damage to the cargo to the extent of $500 per package. This appeal follows.

The issue presented is whether the District Court erred in concluding that the terms of the bill of lading expressed a clear intent to extend limitation of liability benefits to Harrington.

■ Section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5), provides that:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in conjunction with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

It must be noted, however, that the limitation of liability provision contained in 46 U.S.C. § 1304(5) is applicable only to carriers and ships. The term "carrier" is defined as including "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C. § 1301(a). Since stevedores, terminal operators, freight handlers and other agents of the carrier do not come within this definition they are not automatically afforded the limitation of liability benefits provided by 46 U.S.C. § 1304(5). *See Robert C. Herd & Co., Inc. v. Krawill Machinery Corp.,* 359 U.S. 297, 302, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). In *Herd,* the Supreme Court found "nothing in the provisions, legislative history and environment of the Act" to indicate any intention "to limit the liability of negligent agents of the carrier."

■ Although COGSA does not operate to afford limitation of liability benefits to agents of the carrier, it is, however, well settled that parties to a bill of lading may contractually extend limitation of liability benefits to non-carriers and agents of the carrier. *See Robert C. Herd & Co., Inc. v.*

*Krawill Machinery Corp., supra,* at 302, 305, 79 S.Ct. at 769, 771; *Secrest Machine Corporation v. S.S. Tiber,* 450 F.2d 285, 286 (5th Cir.1971); *Rupp v. International Terminal Operating Co., Inc.,* 479 F.2d 674 (2d Cir.1973).

■ Bill of lading provisions which extend defenses and protections to the carrier's agents and contractors are known in Admiralty law as "Himalaya" clauses. Clauses such as these, which purport to limit the liability of carrier's agents or contractors, must be "strictly construed and limited to intended beneficiaries." *Robert C. Herd & Co. v. Krawill Machinery Corp., supra,* 359 U.S. at 305, 79 S.Ct. at 771. The clause itself must clearly express the understanding of the contracting parties through the "clarity of language used." *Id.* The "clarity of language" requirement does not mean, however, that the limitation of liability benefits extend only to parties specifically enumerated in the bill of lading. "It is sufficient that the terms express a clear intent to extend benefits to a well-defined class of readily identifiable persons." *Certain Underwriters at Lloyds' v. Barber Blue Sea Line,* 675 F.2d 266, 270 (11th Cir.1982).

On appeal, the insurer, Assicurazioni, contends that the District Court erred in allowing Harrington to benefit from the limitation of liability provision in D'Amico's bill of lading. Assicurazioni argues that the bill of lading failed to express a clear intent to benefit Harrington since the bill of lading did not specifically refer to "terminal operators", "freight handlers" or "stevedores".

The bill of lading in the instant case, in pertinent part, provides:

1. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase in any of its responsibilities under said Act.... The provisions in said Act shall ... govern before the goods are loaded on and after they are discharged from the ship and throughout the *entire time the goods are in the custody of the Carrier.* The Carrier shall not be liable in any capacity whatsoever for any delay, nondelivery or misdelivery or loss of or damage to goods occurring while the goods are not in the actual custody of the Carrier. (emphasis added).

2. ... The word "Carrier" shall include the ship, her owner, Master, operator, demise charterer, and if bound hereby the time charterer, and any substituted Carrier, whether the owner, operator, or Master shall be acting as Carrier or Bailee ...

18. ... In case of any loss or damage ... the value of the goods shall be deemed to be $500.00 per package ... and the Carrier's liability, if any, shall be determined on the basis of $500.00 per package....

21. ... *If, however, it shall be adjudged that any other than the owner or demise charterer is Carrier and/or Bailee of the goods all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other.* (emphasis added).

In support of its contention, Assicurazioni relies on *De Laval Turbine, Inc. v. West India Indus., Inc.,* 502 F.2d 259 (3rd Cir.1974). In *De Laval, supra,* the carrier had contracted to transport a generator from Palm Beach, Florida, to St. Croix. The carrier engaged a stevedore to offload the generator and place it onto an overland transporter's truck for delivery to the consignee. While the generator was being loaded onto the overland transporter's truck, it fell and was damaged due to the negligence of the stevedore and the overland transporter. The stevedore and the overland transporter sought to limit their liability under the carrier's bill of lading which contained a "Himalaya" clause identical, in pertinent part, to the bill of lading here at issue. The District Court found

that the stevedore was liable for the full amount but held that the overland transporter's liability was limited to $500 per package under the carrier's bill of lading, since the overland transporter was determined to be a bailee. On appeal, the Third Circuit Court of Appeals affirmed the District Court's finding in regard to the stevedore but reversed as to the overland transporter. The appellate court stated that the non-carrier seeking to be protected would most naturally have been listed among those various persons included in the bill of lading's definition of "carrier".[1] The Court did concede, however, that a non-carrier purporting to be a beneficiary of limitation of liability benefits under a carrier's bill of lading would be able to succeed to those benefits if the non-carrier can point to other language in the document which indicates a clear intent to limit the non-carrier's liability. The Court did look at the provision in the carrier's bill of lading which provided limitation of liability benefits to one "adjudged ... Carrier and/or Bailee",[2] since the District Court apparently relied on that provision to limit the overland transporter's liability. In looking at the above noted provision the appellate court concluded that the term "other" was ambiguous in that there was no indication as to whether the term referred to persons or businesses, or whether the term referred to a more limited category such as a particular class of persons. The court further concluded that the term "bailee" was "too general to support a limitation of liability" stating that "the mere fact that [the purported beneficiary] may fit within the descriptive term is not determinative." *De Laval Turbine, Inc. v. West India Indus., Inc., supra,* at 269, 270. The court, therefore, found that the bill of lading did not clearly express an intent to limit the non-carrier's liability so as to meet their interpretation of the "clarity of language" requirement set forth in *Robert C. Herd & Co., Inc. v. Krawill Machinery Corp., supra.* It is this "clarity of language" re-

quirement which has caused the Third and Eleventh Circuits to adopt different interpretations.

■ The holding in *De Laval* is persuasive. However, authority from one circuit of the United States Court of Appeals is not binding upon another circuit. *U.S. v. Diamond,* 430 F.2d 688 (1970). This Court is bound by the case law of the Eleventh Circuit as well as that of the former Fifth Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

■ We disagree with the *De Laval* court's statement that any reference in the carrier's bill of lading to a non-carrier, which the carrier intends to provide limitation of liability benefits, would most logically be referred to within the definition of "carrier". Inasmuch as COGSA is applicable only to carriers and ships, it would appear just as logical, and perhaps more appropriate, to include any such references within the clause or provision dictating the parties entitled to those benefits.

It is clear from our reading of the bill of lading, particularly in regard to Provisions 1 and 21, that the carrier expressed a clear intent to extend limitation of liability benefits to those who may be engaged by, and on behalf of, the carrier to handle the subject cargo during the time in which the carrier was responsible for that cargo. Although the court in *De Laval* did concede that other language in the document would suffice to extend limitation of liability benefits to a non-carrier if such language expressed a clear intent to do so, we disagree with their finding that the term "bailee" was insufficient to support a limitation of liability and, in turn, reject their interpretation of the "clarity of language" requirement.

This court has previously determined what degree of clarity is required in a bill of lading to express a clear intent to extend limitation of liability benefits to a non-carrier. In *Certain Underwriters at Lloyds' v.*

---

1. Neither the term stevedore nor the term overland transporter was included in the definition of "carrier" under the carrier's bill of lading.

2. See subject bill of lading Provision 21.

*Barber Blue Sea Line, supra,* this Court held that the "clarity of language" requirement does not mean that COGSA benefits extend only to parties specifically enumerated in the bill of lading. "It is sufficient that the terms express a clear intent to extend benefits to a well-defined class of readily identifiable persons. When a bill refers to a class of persons such agents and independent contractors, it is clear that the contract includes all those persons engaged by the carrier to perform the functions and duties of the carrier within the scope of the carriage contract. No further degree of clarity is required." Although the bill of lading which was at issue in *Certain Underwriters, supra,* is not identical to the bill of lading presently at issue, we do not deem this material. The bill of lading in *Certain Underwriters, supra,* included "agents" and "contractors" within the definition of "carrier". This does not, however, materially distinguish *Certain Underwriters, supra,* from the instant case. In the instant case there is other language in the document that refers to a well-defined class of readily identifiable persons, specifically "bailee". In *Certain Underwriters, supra,* this Court held that a reference to a class of persons such as "agents" and "independent contractors" was sufficient to constitute a well-defined class of readily identifiable persons so as to extend limitation of liability benefits to a non-carrier. We see no reason why the term bailee, as used in the bill of lading, is any less clear in expressing an intent to extend limitation benefits to a non-carrier. Moreover, the phrase "adjudged ... Bailee", as contained in Provision 21 of D'Amico's bill of lading, limits even further the class of persons sought to be protected. The use of the term "bailee" and the phrase "adjudged ... Bailee" is entirely consistent with our interpretation of D'Amico's bill of lading in that such language also indicates a clear intent to preclude the carrier from being liable for damage caused by the shipper, the consignee or their agents.

This court is cognizant that the intent of COGSA, *inter alia,* was to establish uni-

form ocean bills of lading to govern the rights and liabilities of carriers and shippers in international trade. However, we do not understand COGSA to require identical, as opposed to uniform, bills of lading. The Judgment of the court below is AFFIRMED.