**Z.K. MARINE, INC. and Southern Offshore Yachts, Inc., Plaintiffs,**

v.

**M/V ARCHIGETIS, her engines, tackle, furnishings, etc., in rem, Malvern Maritime, Inc., her owner, operator, etc., Federal Pacific (Liberia), Ltd., a division of Fednav Limited, d/b/a Fedpac Lines; Continental Stevedoring & Terminals, Inc. and Offshore Marine, Inc., Defendants.**

No. 88–1715–Civ.

United States District Court, S.D. Florida.

Jan. 8, 1991.

---

Fernando S. Aran, Aran, Correa & Guarch, P.A., Miami, Fla., for defendant Federal Pacific (Liberia) Ltd.

Rober Lamar Bell, Miami, Fla., for plaintiffs, Jay Bettis and Co. of Florida and Miller Yacht Sales, Inc.

Robert A. Craven, McIntosh & Craven, P.A., Ft. Lauderdale, for Z.K. Marine, Inc. and Southern Offshore Yachts, Inc.

Allan R. Kelley, Fowler, White, Burnett, Hurley, Banick, & Strictroot, P.A., Miami, Fla., for defendant, Malvern Maritime, Inc.

## OMNIBUS ORDER

HOEVELER, District Judge.

THIS CAUSE is before the Court upon the defendants' motions for summary judgment and partial summary judgment and upon the plaintiffs' motion for summary judgment and motion to strike affirmative defenses.

### Nature of the case

This consolidated action for cargo damage to four yachts and loss of one yacht during ocean transit was brought under this Court's admiralty jurisdiction by the

holders of the yachts' bills of lading against the carrier and its agents, alleging violations of 46 U.S.C. § 1300 *et seq.* The plaintiffs allege that, as owners and holders of the yachts' bills of lading, they are entitled to delivery of the yachts in good condition. Defendants' affirmative defense is that their liability is limited pursuant to the terms of the bills of lading.

### Background

#### A. The Parties

The plaintiffs, Z.K. Marine ("Z.K."), Southern Offshore Yachts ("Southern"), Jay Bettis and Co. ("Bettis") and Miller Yacht Sales, Inc. ("Miller") are Florida importers of yachts for sale in the United States. The M/V Archigetis was the ship transporting the yacht in question, and is owned by defendant Malvern Maritime, Inc. ("Malvern"). The applicable bills of lading were originally issued on behalf of defendant Federal Pacific Liberia, Ltd. ("Fedpac"), which is apparently the charterer. Continental Stevedoring & Terminals, Inc. ("Continental" or the "Stevedores") allegedly caused additional damage to the yachts by its negligence during discharge. Defendant Off Shore Marine, Inc. ("Offshore") shipped and manufactured the yachts, and manufactured the cradles used to ship the yachts.

#### B. The Goods

In September, 1987, five yachts were shipped from Taiwan to the United States aboard the Archigetis. All five yachts were secured by cradles and shipped on deck. Bills of lading were issued by Fedpac to the shipper for each yacht. These were negotiable bills of lading, which were purchased for value by the plaintiffs while the yachts were in transit. The bills showed that the goods were received in good condition. Sometime after the bills of lading were issued, but before delivery in Florida, one yacht was lost and the other four were damaged.

#### C. The Bills of Lading

Each of the five bills of lading provides on its face that one unit only was being shipped, that each yacht was being shipped on deck at shipper's risk, and that the value of the goods could be declared with prior notice. On the back of each bill of lading, the liability for damage or loss was limited to $500 per package or customary freight unit. Each bill of lading contains a paramount clause incorporating the Hague/Visby Rules or the corresponding legislation of the country at the point of discharge. The bills of lading also contain a clause 9, providing that goods loaded on deck shall be clearly marked by the shipper and that the carrier is not liable for insufficiency of packing.

### Discussion

Defendant Malvern has moved for summary judgment based on its contention that bills of lading explicitly limited the carrier's liability to $500 per package. Defendants Fedpac and Continental have moved for partial summary judgment on the basis of the liability limitation provisions of the bills of lading. Plaintiffs have also moved for summary judgment on the issues of liability and the validity of the limitation provisions. Plaintiff Jay Bettis & Co. ("Bettis") filed a motion for summary judgment, but labeled its memorandum of law, cross-motion to strike affirmative defenses. These motions will be resolved together, as all are based on the issues of defendants' liability and the validity of the limitation provisions in the bills of lading.

Defendants argue that pursuant to the Carriage of Goods by Sea Act, 46 U.S.C. § 1300, *et seq.* ("COGSA"), and the explicit provisions of the bills of lading, damages are limited to $500 per package. Because the bills of lading are clearly stamped "one unit", defendants contend that their liability is limited to $500 per yacht. Alternatively, defendants argue that if the yachts are not one package, they are each a customary freight unit—since the freight charges were based upon a customary freight units and yacht was used as the basis of a single freight charge—and consequently subject of the $500 limitation.

Plaintiffs argue that the terms of the bills of lading should be given no effect because the consignees had no opportunity

to declare a higher value for the yachts, they now argue that the carrier cannot now limit its liability. Plaintiffs urge the Court to disregard the explicit limitation because they had no chance to bargain over this clause. Alternatively, plaintiffs argue that the limitation is for $500 per package, not per yacht and thus the limitation does not apply to this situation.

■ An initial question that this Court must resolve is what law applies to this situation. COGSA, although generally applicable to goods shipped—as these yachts were—from foreign ports to ports in the United States, does not directly apply to this case because the yachts were carried on deck.[1] Defendant Malvern contends that although COGSA does not apply *ex proprio vigore,* the bills of lading specifically provide, in the paramount and on deck clauses, that the goods will be subject to COGSA. Plaintiffs respond that the Harter Act, 46 U.S.C. §§ 190–95 (1982 & Supp. IV 1986), applies rather than COGSA.

■ The Harter Act applies to all voyages where COGSA does not apply, including those between American and foreign ports, and allocates the risks of the voyage from delivery to the carrier until redelivery to the consignee at a fit and customary wharf. 46 U.S.C. §§ 190–95 (1982 & Supp. IV 1986). Parties may not avoid the Harter Act by stipulating to foreign law. Par-

ties may, however, stipulate that COGSA will apply. *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313 (2d Cir.1983), *cert. denied* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984) (parties may, by contract, extend the application of COGSA beyond its normal parameters).

■ The language of the paramount clause[2] in the bills of lading does not directly refer to COGSA. Rather, it appears to require that the Hague or Hague/Visby Rules be applied. The Hague Rules were, however, codified in COGSA. *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.,* 603 F.2d 1327 (9th Cir.1979). Thus the parties appear to have stipulated by contract that COGSA would apply to these bills of lading. Accordingly, this Court finds that COGSA applies to this situation.

■ A *prima facie* case for liability is made out when goods are accepted on board ship in good condition as evidenced by the bill of lading and those goods are lost or damaged on delivery. 46 U.S.C. § 1303(4). The bills of lading all evidence receipt of the yachts on board by the carrier in good condition. Neither plaintiff nor defendants have submitted affidavits or other documentary evidence regarding the condition of the yachts on delivery, however. Thus, the court does not have before it evidence on which to determine the issue

---

1. COGSA provides that:
    Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.
    46 U.S.C. § 1300 (1982 & Supp. IV 1986). Although the case at bar involves the carriage of yachts by sea to ports of the United States in foreign trade, it does not involve the carriage of "goods" as defined by the act. COGSA specifically excepts "on deck" items from its definition of the term "goods." Specifically:
    The term "goods" includes goods, wares, merchandise, and articles of every kind whatsoever, except live animal and cargo which by the contract of carriage is stated as being carried on deck and is so carried.
    46 U.S.C. § 1301(c) (1982 & Supp. IV 1986). As the yachts in question were covered by a contract specifying on deck carriage, the bills of lading covering their carriage fall outside the purview of COGSA.

2. The paramount clause in each bill of lading states:
    This bill of lading shall have effect subject to the provisions of any legislation incorporating [illegible] by Rules for the International Convention for the Unification of certain rules relating to Bills of Lading dated Brussels [illegible] (the Hague Rules) or those signed at Brussels February 23rd, 1968 (the Hague Visby Rules) and which is compulsorily applicable to the contract of carriage contained herein. If no such legislation is compulsorily applicable, the Hague Rules, or if applicable, the Hague Visby Rules, or if applicable, the Hague Visby Rule as enacted in the country of the port of loading shall apply. When no such enactment is in force in the country of the port of loading, the corresponding legislation of the country of the port of discharge shall apply and in the absence of any such legislation, the terms of the 1924 convention as amended by the 1968 Protocol shall apply.

of liability. Plaintiffs' motions for summary judgment must therefore be denied.

The defendants contend that if they are liable at all, it is for a maximum of $500 per package as long as the shipper has a fair opportunity to declare a higher value and pay a correspondingly higher freight. *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438 (9th Cir.1974). The plaintiffs argue that the instant limitation clause is invalid because they had no such opportunity to declare a higher value.

■ First, they argue that there is no opportunity to declare a higher value because the bills of lading themselves provide no space to do so. A cursory inspection of the bills of lading reveals that this is not the case, however. On the face of the bills, in capital letters, it states that the "VALUE OF GOODS MAY BE DECLARED PROVIDED MERCHANT GIVES PRIOR NOTICE AND AGREES TO PAY GREATER FREIGHT AD VALOREM BASIS SEE CL 18 ON BACK HEREOF." Clause 18 limits the value to $500 per package unless a higher value is declared and higher freight paid.[3] Although there is no specific slot for the shipper to write in its higher value, there appears plenty of space on the face of the bills for it to do so, if desired. The bills plainly afford space and, by their terms, opportunity for the shipper to declare a higher value.

■ Plaintiffs argue in the alternative that even if the bills of lading offer the shipper opportunity to declare a higher value, the plaintiffs, as purchasers of the negotiable bills, had no such opportunity.

Therefore, they argue that the limitation provisions should not be enforced. Purchasers of a negotiable bill of lading, however, purchase only those rights which the shipper had. J. White & R. Summers, *Uniform Commercial Code* vol.2 at 224–25 (3d ed. 1988). The right to declare a higher value and pay higher freight ended when the goods were delivered on board the ship. 46 U.S.C. § 1304(5) (nature and value of goods must be declared by shipper before shipment). Therefore, the purchasers of the bills cannot now complain if a higher value was not declared.

■ Plaintiffs' next contention is that each yacht is not a package so that the limitation to $500 per package does not apply. Plaintiffs contend that the cradles attached to the yachts for ease in transporting them do not suffice as packaging because the cradles do not enclose the yachts. Plaintiffs are mistaken in this regard. A package is some class of cargo, irrespective of size or weight, which has been prepared for transportation by the addition of some packaging that facilitates handling, but which does not necessarily enclose the goods. *Marante Forwarding v. C.A. Naviera de Transporte y Turismo*, 486 F.Supp. 636, 637 (S.D.Fla.1980). There, Judge Spellman held that air conditioning equipment attached by bolts to wooden skids but not otherwise boxed was a package within the purview of COGSA. *Id.* Similarly, Judge Arnow in the Northern District of Florida held that a pressurizer weighing approximately 155,000 pounds, placed on three wooden saddles and se-

---

**3.** Clause 18 provides in its entirety:

In case of any loss of damage to or in connection with goods exceeding in actual value $500 per package lawful money of the United States or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per freight unit, on which basis the freight is adjusted and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper upon delivery to the carrier and inserted on this Bill of Lading and extra freight paid as required and in such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed such declared value. Whenever this Bill of Lading is not subject to the United States Carriage of Goods by Sea Act, the amount of any like limitation per package, or, if the goods are not shipped in packages, per customary freight unit, as stated in the Hague or Hague Visby Rules, whichever applies to this contract of carriage pursuant to clause 3 hereof, shall be substituted in the place and stead of the aforementioned $500 amount or limitation by the foregoing in all other respects to remain identical.

cured by means of steel straps was a package within the meaning of COGSA. *Taiwan Power Co. v. M/V George Wythe*, 575 F.Supp. 422, 423–24 (N.D.Fla.1983). In the Second Circuit, a power plant, *General Motors v. Moore–McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.1971); a toggle press, *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152 (2d Cir.1968); a fire engine, *FMC Corp. v. S.S. Marjorie Lykes*, 851 F.2d 78 (2d Cir.1988), were found to be packages as long as they were on some form of skids. In the instant case, the yachts were all transported on cradles, analogous, for purposes of the package analysis, to skids. Accordingly, this court finds that each yacht constituted a package within the purview of COGSA's liability limitation provisions. Therefore the limitation of $500 per package on the bills of lading applies to limit liability of the carrier to $500 per yacht.

The limitation of liability provisions of COGSA apply only to carriers and ships. 46 U.S.C. § 1304(5). The term "carrier" is defined as the owner or charterer who enters into a contract of carriage with the shipper. 46 U.S.C. § 1301. Thus, the liability provisions apply to the M/V Archigetis, Fedpac Lines and Malvern Maritime. These provisions do not afford limitation of liability benefits to agents of the carrier, such as Continental Stevedore Terminals, however, unless the parties contractually extend limited liability to non-carriers and agents of the carrier. *Generali v. D'Amico*, 766 F.2d 485 (11th Cir.1985). In clause 19, the instant bills of lading extend the limitation of liability provisions to servants and agents of the carrier, including independent contractors.

Clauses which purport to limit the liability of the carrier's agents or contractors must be strictly construed. *Generali*, 766 F.2d at 488. The terms must express a clear intent to extend benefits to a well-defined class of readily identifiable persons. *Id.* The class of agents and independent contractors includes all people engaged by the carrier within the scope of the carriage contract. *Certain Underwriters at Lloyd's v. Barber Blue Sea Line*, 675 F.2d 266 (11th Cir.1982). Stevedores

and terminal operators fall within such a well-defined class. *Barber Blue Sea Line*, 675 F.2d at 270. Thus, the liability limitation provisions of the bills of lading extend protection to all defendants in the instant case.

Conclusion

Based upon the foregoing analysis, this court finds that the carrier validly limited its liability to $500 per package, each yacht constituted one package unit, and the purchasers of the bills of lading are bound by the terms of the bills of lading, including the limitation provisions. Therefore, it is

ORDERED and ADJUDGED that the motion of Defendant Malvern Maritime, Inc. for summary judgment is GRANTED. The motion of Defendants Fedpac Line and Continental Stevedoring for partial summary judgment is GRANTED. Defendant Malvern Maritime's motion to strike the affidavit of Robert Bell is DENIED. Plaintiffs' motion for summary judgment is DENIED, as it raises issues identical to those disposed of in the foregoing analysis.

DONE and ORDERED.