**CANON USA, INC., et al., Plaintiffs,**

**v.**

**NORFOLK SOUTHERN RAILWAY COMPANY, et al., Defendants.**

**Civil Action No. 1:94–cv–2571–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 15, 1996.

---

Edwin D. Robb, Jr., Bouhan, Williams & Levy, Savannah, GA, for plaintiffs.

Richard Kennon Hines, V, Nelson, Mullins, Riley & Scarborough, Atlanta, GA, Hyman Hillenbrand, Kroll & Tract, Miami, FL, Earl W. Gunn, Johnathan Tyler Krawcheck, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, Samuel P. Pierce, Jr., Atlanta, GA, for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on the parties' cross motions for summary judgment and for oral argument. At issue is whether the limitation of liability provisions contained in the Carriage of Goods by Sea Act will apply to these Defendants or whether the Carmack Amendment to the Interstate Commerce Act will impose liability.

## I. STATEMENT OF UNDISPUTED FACTS

In September of 1993, Canon, Inc. ("Canon"), arranged to have NYK Lines ship forty-four (44) photocopiers from Japan to its subsidiary, Plaintiff Canon USA, Inc. ("Canon USA"), in Atlanta, Georgia. Pursuant to this agreement, Canon and NYK Lines executed an intermodal bill of lading to cover the entire shipment. Canon did not declare a value in excess of $500.00 on the bill of lading but instead insured the shipment with Plain-

tiff Yasuda Fire and Marine Insurance Company ("Yasuda").

Pursuant to the bill of lading, NYK Lines itself agreed to provide water liner service between Japan and Seattle, Washington and to subcontract[1] for unloading, inland transportation, and delivery. NYK Lines arranged for Burlington Northern Railroad to transport the cargo from Seattle to Chicago, Illinois and for Defendant Norfolk Southern Railway Company ("Norfolk Southern") to carry the copiers from Chicago to Atlanta. Defendant Norfolk Southern then arranged to have Defendant In–Terminal Services Corporation ("ITS") unload the cargo from the train and load it onto an NYK Line chassis. NYK Line arranged for Defendant Falcon Transport, Inc. ("Falcon"), to transport the copiers by motor carrier ten miles to Plaintiff Canon USA's warehouse.[2] On September 28, 1993, as the Falcon driver was on the entrance ramp to I–285, the cargo container slid off of the chassis and was damaged.

On September 26, 1994, Plaintiffs Canon USA and Yasuda filed the instant action against Defendants Norfolk Southern, ITS, and Falcon for negligence and breach of contract. NYK Lines was not named as a defendant. The parties have filed cross motions for summary judgment[3] and have requested that oral arguments be held. Since this court believes that it has sufficient information before it to rule on the issues presented, the motions for oral argument are DENIED.

## II. DISCUSSION

### A. *Applicability of Bill of Lading Terms To Third Party Defendants*

#### (1) *Limitation of Liability Provisions*

Defendants argue that they are entitled to the $500 limitation of liability protection af-

---

1. Canon was not aware of any of the specific terms of NYK Lines' subcontracts.

2. While there is no written contract between NYK Lines and Defendant Falcon, the parties had agreed to rates for transportation of containers from various railyards around Atlanta.

3. The court notes that Defendants' brief in support of their motion for summary judgment was

forty-four pages long. While the court did not strike the brief as exceeding this court's page limitations (Revised Case Instructions at ¶ 2), Defendants are cautioned that further violations of this rule will not be tolerated. Should Defendants wish to file a brief that exceeds twenty-five pages, they should seek prior permission from the court.

forded to the carrier by the Carriage of Goods by Sea Act ("COGSA") and the bill of lading. Plaintiffs argue that the land-based Defendants are not protected by the limitation of liability provisions.

The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300, *et seq.*, governs the rights, obligations, and liabilities of the parties to a bill of lading for the carriage of goods by sea. COGSA provides a strict limitation on the carrier's liability: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package." 46 U.S.C.App. § 1304(5) (1975). COGSA, by its terms, only applies to the ocean portion of the shipment. 46 U.S.C.App. § 1301(e).

■ The bill of lading, however, contractually can expand COGSA coverage to third parties if it expresses a clear intent to provide benefits "to a well-defined class of readily identifiable persons" such as agents and subcontractors. *Certain Underwriters at Lloyds' v. Barber Blue Sea Line*, 675 F.2d 266, 270 (11th Cir.1982). *See Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 660 (1st Cir.1990); *Institute of London Underwriters v. Sea–Land Serv., Inc.*, 881 F.2d 761, 767 (9th Cir.1989). Such a clause is called a "Himalaya clause" and is to be strictly construed. *Robert C. Herd &*

*Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959); *Barretto Peat*, 896 F.2d at 660; *Barber Blue*, 675 F.2d at 269.

## DEFENDANTS NORFOLK SOUTHERN AND FALCON

■ Plaintiffs argue that the Carriage of Goods by Sea Act ("COGSA") does not apply to Defendants Norfolk Southern and Falcon because Article 8 of the bill of lading exempts the land carriage portion of the shipment from the limitation of liability provisions. Defendants assert that Article 8 does not nullify the protections afforded to subcontractors in Articles 2, 6, and 28.

In Article 2 of the bill of lading, the Clause Paramount extends the scope of COGSA protection to land carriers by providing that the Carriage of Goods by Sea Act ("COGSA") "shall apply and govern before the goods are loaded on and after they are discharged from the Vessel and throughout the entire time the Goods are in custody of the Carrier, its agents, servants, representatives and Sub–Contractors of the Carrier." Article 6 [4] provides that the subcontractors can invoke all the defenses available to the carrier under the bill of lading and that the aggregate amount recoverable from the carrier and its subcontractors will "in no case" exceed the limit in Article 28. Article 8 [5] provides that

---

4. Article 6 provides:
 The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage, or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. Every such agent, servant, representative or Sub–Contractor shall be entitled to the benefit of each and every defence, privilege, right, exemption, limitation, immunity, liberty and condition contained herein for the benefit of the Carrier, including without limitation, the limitation of liability provision in Article 28, as if such provisions were expressly for their benefit; and in entering into this contract the Carrier, to the extent of those provisions, does so not only on his own behalf but also as agent and trustee for such agents, servants, representatives and Sub–Contractors.... The aggregate of the amount recoverable from the Carrier, and such agents, servants, representatives and Sub–Contractors shall in no case exceed the limit provided for in Article 28.

5. Article 8 provides in pertinent part:

It is contemplated that the Goods carried hereunder may be carried in through transportation that will include ocean carriage to be performed by the Carrier and domestic inland carriage to be performed by carrier(s) by land or air. (i) For the Goods carried in through transportation, if it is established by the Merchant that loss of or damage to or in connection with the Goods occurred while in custody of the Carrier, its agents, servants, representatives and Sub–Contractors of the Carrier, during the period from the time the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge and also occurring during any previous or subsequent period of carriage by sea or inland waterways, the Carrier shall be responsible for such loss or damage subject to the provisions of this Bill of Lading and [COGSA] ... as provided for in Article 2 hereof. (ii) Notwithstanding Article 2 hereof, for the Goods carried in through transportation, if it is established by the Merchant that loss of or damage to in connection with the Goods occurred while the Goods were in custody of

COGSA will cover any losses incurred during the ocean carriage. In the event that the goods are lost or damaged during the inland portion of the shipment, however, Article 8 provides that the carrier will be liable "to the extent to which such carrier(s) by land or air are responsible under the terms and conditions of the transport document(s) of the carrier(s) by land or air, whether issued or not." Article 28 [6] provides that, when COGSA governs the bill of lading and the Merchant has not declared a higher value, the liability of the carrier will not exceed $500 per package.

The court in *Taisho Marine & Fire Ins. Co., Ltd. v. Maersk Line, Inc.*, 796 F.Supp. 336 (N.D.Ill.1992), *aff'd*, 7 F.3d 238 (7th Cir. 1993), ruled that the $500 limitation would apply to the land carriers in a case involving a bill of lading with similar language. The bill of lading provided in clause three that the carrier was free to subcontract on any terms and that such subcontractors were entitled to the benefit of all of the provisions in the bill of lading. *Id.* at 338. Under clause five, COGSA protected the carrier during the ocean voyage but, if the goods were damaged during the land portion of the shipment, the carrier's liability would be determined by the inland carrier's contracts of carriage or by state law if there were no contracts. *Id.* Paragraph 5 further provided that the carrier's liability would "in no event" exceed the amount of compensation in clause six. *Id.* Clause six provided that the carrier's liability would not "in any event" exceed $500 per package unless the shipper declared a higher value for the goods. *Id.* Since the two "in no event" clauses covered the subcontractors as well as the carrier, the court held that the $500 limitation provision would apply even

when liability was evaluated under the terms of the land carriage contracts or state law. *Id.* at 342–43. The court found that clause six "must necessarily have some meaning other than a mere parroting" of clause five's COGSA protection for the ocean portion of the shipment. *Id.* at 343.

However, the court in *Canon USA, Inc. v. Nippon Liner Sys., Ltd.*, 1992 WL 82509 (N.D.Ill.1992), faced with a similar bill of lading, determined that the $500 limitation of liability provision would not protect the subcontractor. In this case, the bill of lading provided that COGSA would govern in the event of losses during the ocean carriage. *Id.* at *3. If the goods were damaged during the inland portion of the shipment, however, paragraph 7(a)(2) provided that the carrier would be liable to the same extent that the subcontractor would have been liable had the subcontractor made a separate contract with the shipper. *Id.* The court found that paragraph 7(a)(2) "clearly expresses" the parties' intent to limit the $500 COGSA protection to the ocean portion of the carriage and "to provide a different set of liability rules for inland routes." *Id.* Accordingly, the court held that the inland subcontractors could not invoke the $500 limitation of liability protection of COGSA and the bill of lading. *Id.*

This court agrees with the rationale of the *Taisho* court because its interpretation gives the fullest meaning to the contract terms. Even though Article 8 seeks to impose a different definition of liability on the carrier when the loss or damage occurs during the land portion of the shipment, such liability is subject to the limitations in Articles 2, 6, and 28 which emphasize that the liability of the subcontractors will "in no event" exceed $500. Were this court to embrace the rea-

carrier(s) by land or air, the Carrier shall be responsible for such loss or damage to the extent to which such .carrier(s) by land or air are responsible under the terms and conditions of the transport document(s) of the carrier(s) by land or air, whether issued or not.

**6.** Article 28 provides in pertinent part:

The Carrier shall not in any event be liable for any loss of or damage to or in connection with the transportation of the Goods in an amount exceeding 666.67 Units of Account per package or unit or 2 Units of Account per kilogramme

of gross weight of the Goods lost or damaged, whichever is the higher ... unless the nature and value of such Goods have been declared by the Merchant before shipment and inserted in this Bill of Lading on the face hereof and extra freight has been paid as required.... In the case this Bill of Lading covers the Goods moving to or from the U.S.A. and if it shall be adjudged that the Carriage of Goods by Sea Act, 1936 of the United States governs this Bill of Lading, the liability of the Carrier shall not exceed Five Hundred Dollars lawful currency of the U.S.A. ($500) per package or unit.

soning of *Canon USA* and hold that Article 8 served to remove the inland carriers from the protections of COGSA, the provisions of Articles 2, 6, and 28 would be rendered meaningless. Accordingly, this court holds that the $500 limitation of liability provided for in Article 28 applies to Defendants Falcon and Norfolk Southern.

## DEFENDANT ITS

■ Plaintiffs argue that the Carriage of Goods by Sea Act does not apply to Defendant ITS because ITS was hired by Norfolk Southern and has no direct contractual relationship with NYK Lines. Defendants argue that ITS, as a terminal operator, is a subcontractor under Article 1 and that Article 6 does not require that a subcontractor be hired directly by the carrier.

Numerous courts have ruled that a direct contractual relationship between the carrier and the subcontractor is required. *Taisho Marine & Fire Ins. Co., Ltd. v. The Vessel "Gladiolus,"* 762 F.2d 1364, 1366 (9th Cir. 1985) (clause provided limitation of liability protection to "all servants, agents and independent contractors used or employed by the Carrier....."); *Toyomenka, Inc. v. S.S. Tosaharu Maru,* 523 F.2d 518, 521 (2nd Cir. 1975). *See Taisho Marine,* 796 F.Supp. at 340 (the court should look to the contractual relation between the parties to determine whether the subcontractor was engaged by the carrier to perform those duties the carrier was obligated to perform).

■ In the instant case, Article 1 defines a "Sub–Contractor" as including,

owners and operators of Vessel (other than the Carrier), stevedores, terminal operators, warehousemen, road and rail transport operators and any independent contractor **employed by the Carrier** in performance of the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

(Emphasis added). Since the language is almost identical to that used in the Ninth Circuit *Taisho* and the Second Circuit *Toyomenka* cases, this court will adopt their rationale and hold that the bill of lading requires a direct contractual relationship between the carrier and any beneficiary of the bill of lading. Defendants' argument that "employed by the Carrier" clause only modifies "independent contractor" and not the other entities named such as "terminal operators" is not persuasive. If anything, the modifier is ambiguous and any ambiguities must be resolved against the drafter of the bill of lading.[7]

Defendants' argument that Article 8 does not apply to limit ITS' liability since Article 8 refers to inland carriers only and not to terminal operators also must fail. Article 8 serves to define NYK Lines' responsibilities in the event that the goods are lost or damaged while in the custody of the land carrier. To the extent that ITS seeks to enjoy the protections afforded NYK Lines under the bill of lading, so must it be exposed to NYK Lines' liabilities.

Finally, Defendants argue that ITS was an agent of Defendant Norfolk Southern and that ITS, as such, cannot be sued by Plaintiffs. While agency law might establish that Defendant ITS is not liable to Plaintiffs, the parties' cross motions for summary judgment dealt with the applicability of COGSA to the various Defendants. Accordingly, the agency issue is not before this court. Additionally, Defendants have not provided any factual support for their agency claim.[8] Based on

---

7. Bills of lading are contracts of adhesion and any ambiguity must be resolved against the carrier-drafter. *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.,* 32 F.3d 1244, 1250 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Mori Seiki USA v. M.V. Alligator Triumph,* 990 F.2d 444, 448 (9th Cir.1993); *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 482 (2nd Cir.1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986).

8. The affidavit from a manager at Norfolk Southern provided only that "ITS agreed to provide labor and machinery to carry out NORFOLK SOUTHERN's responsibility under its contracts with its customers to load and unload containers and trailers ..." (Howie Aff. at ¶ 4). Since this court does not know whether ITS agreed to act on Norfolk Southern's behalf and subject to its control, it cannot make the factual determination of an agency relationship. *See* Restatement (Second) of Agency § 1 cmts a & b (1958).

the foregoing discussion, this court must conclude that Defendant ITS is not entitled to the $500 limitation of liability provision contained in the bill of lading.

### (2) Statute of Limitations

■ Defendants argue that the action is barred because Plaintiffs did not institute suit against NYK Lines within one year as required by the bill of lading. Plaintiffs argue that the suit was timely since it was commenced against these Defendants within the applicable time period.

Article 26 provides that "the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered." Since the contract does not state explicitly that any action must include the carrier, this court must hold that it is unclear whether the action must be instituted against any party within one year or against the carrier (NYK Lines) within the time frame. Accordingly, the provision must be construed in favor of Plaintiffs to permit suit against either the carrier or its subcontractors within the contractual statute of limitations. Since Plaintiffs' suit against the subcontractors of NYK Lines was instituted within a year of delivery, this court must find that the action was timely.

### B. Applicability of the Carmack Amendment

Plaintiffs have argued that the Carmack Amendment to the Interstate Commerce Act applies to the inland portion of the shipment and prevents the application of the limitation of liability provisions. Defendants argue that the Carmack Amendment does not apply due to the nature of the shipment.

■ The Carmack Amendment imposes liability on common carriers for losses to domestic shipments or to foreign shipments originating in the United States. 49 U.S.C. § 11707(a)(1) (1995). Pursuant to the Amendment, covered carriers must issue a receipt or bill of lading for the cargo. *Id.* A shipment originating in a foreign country and terminating in the United States is not covered by the Carmack Amendment, however, unless the domestic portion of the transportation is covered by a separate bill of lading. *Reider v. Thompson,* 339 U.S. 113, 117, 70 S.Ct. 499, 501–02, 94 L.Ed. 698 (1950); *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 701 (11th Cir.1986), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987). *See Capitol Converting Equip., Inc. v. LEP Transport, Inc.,* 965 F.2d 391, 394 (7th Cir.1992). *Contra Canon USA,* 1992 WL 82509 ("We must respectfully disagree with *Capitol Converting* to the extent that it relies on *Swift Textiles* for the proposition that a separate bill of lading is required for the last leg of a domestic journey in order for the Carmack Amendment to apply.").

■ In the instant case, the shipment originated in a foreign country and terminated in the United States. The "through" bill of lading [9] issued in Japan covered the entire shipment. Accordingly, the court must conclude that the Carmack Amendment is not applicable.[10]

### III. CONCLUSION

The parties' motions for oral argument [25–1, 26–1] are DENIED. Plaintiff's motion for partial summary judgment [20–1] is

---

9. A "through" bill of lading governs the entire duration of the shipment such that separate ones need not be issued at each temporary stop. *See Canon USA,* 1992 WL 82509. Plaintiffs have acknowledged that a "through" bill was involved in the instant case (Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment at 4, 19).

10. Since this court has ruled that the Carmack Amendment does not apply, the court need not reach Defendants' alternative argument that the limitation of liability provisions in Falcon's tariff

and Norfolk Southern's circular should enforced against Plaintiffs.

Defendant Falcon has on file with the Interstate Commerce Commission ("ICC") a tariff which limits its liability under the Carmack Amendment to $100,000.00 when the shipper fails to declare value in excess of that amount. Defendant Norfolk Southern's Exempt Rail Circular, which was incorporated by reference into its contract with NYK Lines, provides that its liability is limited to $250,000.00 unless Carmack coverage is obtained for an additional $25.00.

GRANTED IN PART and DENIED IN PART as follows: (1) GRANTED as to the inapplicability of COGSA to Defendant ITS and (2) DENIED as to the application of COGSA to Defendants Norfolk Southern and Falcon and the application of the Carmack Amendment as to all Defendants.

Defendants' motion for summary judgment [20–2] is GRANTED IN PART and DENIED IN PART as follows: (1) GRANTED as to the application of COGSA to Defendants Falcon and Norfolk Southern as well as the inapplicability of the Carmack Amendment and (2) DENIED as to the application of COGSA to Defendant ITS and as to the statute of limitations issue.

SO ORDERED.