**NIPPON FIRE & MARINE INSURANCE CO., LTD.,**
Plaintiff,

v.

**SKYWAY FREIGHT SYSTEMS, INC.; U.S. Airways, Inc.; and United Air Lines, Inc., Defendants.**

**No. 98 Civ. 6780 DLC.**

United States District Court,
S.D. New York.

Sept. 22, 1999.

David T. Maloof, Lawrence C. Browne, Maloof & Browne LLP, New York City, for plaintiff.

Craig T. Mierzwa, Hoguet Newman & Regal, LLP, New York City, for Skyway Freight Systems, Inc., defendant.

Charles E. Schmidt, Matthew T. Loesberg, Kennedy Lillis Schmidt & English, New York City, for U.S. Airways, Inc., defendant.

David de Andrade, Law Office of Scott A. Felcher, P.C., New York City, for United Air Lines, Inc., defendant.

### OPINION AND ORDER

COTE, District Judge.

Plaintiff Nippon Fire & Marine Insurance Co., Ltd. ("Nippon") was the insurer of three shipments made by Toshiba America Information Systems, Inc. ("Toshiba") through Skyway Freight Systems, Inc. ("Skyway"). In each of the first two shipments, Skyway subcontracted with another carrier—U.S. Airways, Inc. ("USAir") on the first shipment and United Air Lines, Inc. ("United") on the second shipment. Skyway made the third shipment itself by truck. None of the shipments were delivered complete. Skyway and the sub-contracting carriers now move for summary judgment. For the reasons stated, the motions are granted.

## BACKGROUND

The following facts are undisputed. Skyway is an interstate common carrier that made three shipments for Toshiba, a manufacturer and distributor of laptop computers, from Toshiba's facilities in California to either New Jersey or Florida. The definition section of Skyway's tariff indicates that "Service Level means 3S (3–day), Standard (2–day) or Emergency (1–day) air freight service or Express Truck service." For most cities, Express Truck Service requires delivery within 2 to 5 business days after pick-up. The Skyway bills of lading filled out by Toshiba state that the shipments are subject to Skyway's tariffs in effect at the time of the shipment. The appropriate tariff contains the following limitation of liability clause:

> Declared Value—Air
>
> A shipment will have *a declared value of 50 cents per pound or $50.00*, whichever is higher, unless a higher value is declared on the Airbill at the time of receipt.

(Emphasis supplied.) The airbills issued by Skyway contain boxes that permit Toshiba to declare the value of the goods. If it had declared a value, the fee for shipping the goods would have been increased at a rate dependent on the value declared. The tariff provides that "Skyway's liability shall, in no event, exceed the declared value of the shipment...."

The tariff authorizes Skyway, "exercising due diligence in order to protect all property accepted for transportation, [to] determine the routing of all shipments." Skyway is also authorized to

> substitute common motor carrier transportation, in order to expedite delivery, under the following conditions:
>
> 1. When a shipment, because of its size, weight or contents, cannot be accommodated on aircraft over some portion of its routing; or,
> 2. When airlift is unavailable due to weather conditions, mechanical trouble, embargo, strike, or other emer-

gency conditions beyond Skyway's control; or

3. When a shipment will be unreasonably delayed because, on some portion of its routing, the volume of cargo on hand exceeds the capacity of aircraft departing within reasonable time.

The tariff also specifies claim procedures in the event that a shipment is lost or damaged. The tariff states that "All claims (except overcharge) must be made in writing to Skyway within 270 days after the date of acceptance of the shipment for transportation." Nonetheless, the tariff requires that "[c]laims for concealed loss or damage must be reported to Skyway within 12 days after delivery of the shipment...." Concealed loss is defined as "that which could not have been noticed at the time of delivery."

*First Shipment—USAir*

On January 28, 1997, Toshiba shipped 54 cartons of data processing machines from California to Toshiba's consignee in New Jersey (the "First Shipment"). On the bill of lading, Toshiba selected "SS–SKYWAY ST 2 DAY" or Skyway's standard two day service. Toshiba left the declared value line blank but did declare a weight of 864 pounds.

On January 29, 1997, Skyway shipped the First Shipment from California to Pennsylvania through common carrier USAir using its Air Express service. USAir issued its own air waybill that shows that the box "Declared Value for Carriage" was left blank and reflects a weight of 939 pounds. USAir's relevant limitation of liability clause states that USAir's total liability shall not exceed $.50 per pound. USAir lost the shipment, which was never delivered to Skyway or to the consignee.

*Second Shipment—United*

On February 28, 1997, Toshiba made a second shipment of 25 cartons of data processing machines from California to the same consignee in New Jersey, again via Skyway's standard two-day air service (the "Second Shipment"). Toshiba did not declare a value on the Skyway bill of lading but did declare a weight of 375 pounds.

On March 1, 1997, Skyway shipped the Second Shipment from California to Pennsylvania through air carrier United. United's relevant limitation of liability clause states that a shipment has a declared value of 50 cents per pound unless a higher value is declared. According to the air waybill issue by United, Skyway used United's general freight service, and the cartons were combined into a shipment totaling 1095 pounds. The waybill also states that all claims must be made within nine months and nine days of the date of acceptance. United lost 13 of the 25 cartons. The consignee received the 12 cartons that were not lost on March 4, 1997. No claim was ever made to United by Skyway.

*Third Shipment—Truck*

On July 31, 1997, Toshiba shipped another 33 cartons of data processing machines from California to Toshiba's consignee Computer City in Florida (the "Third Shipment"). This time, Toshiba selected "SE–SKYWAY 3S (3 DAY)" delivery, or Skyway's standard three day delivery, on the bill of lading. Toshiba did not declare a value on the Skyway airbill but did declare a weight of 396 pounds. At least part of the shipment was delivered and an employee of Computer City signed a delivery receipt on August 6, 1997. That receipt noted that 10 pieces were received. Nonetheless, these ten pieces were apparently only 10 of the original 33 cartons. Skyway received a report of a shortage for the undelivered cartons on September 12, 1997.

*Procedural History*

Nippon filed the complaint in this action on September 24, 1998.[1] The complaint

---

1. Nippon filed this action as a related case to *Nippon Fire & Marine Ins. Co. v. Skyway* *Freight Systems, Inc.,* 98 Civ. 4489, which involved different shipments and different

alleges four causes of action. The first cause of action alleges breach of contract against Skyway on each of the three shipments. The remaining three causes of action allege negligence, breach of bailment obligations, and breach of warehouseman's obligations and conversion against all three defendants. Skyway has also filed a cross-claim against USAir and United in connection with their respective shipments. United has also asserted a cross-claim against Skyway.[2]

As agreed at a conference with the parties on May 21, 1999, and as memorialized in this Court's Order of the same day, any motion brought in this action was required to be filed by June 11. In accordance with this schedule, Skyway moved for partial summary judgment against Nippon on all three shipments to limit its liability to the amount stated in the bills of lading. Both USAir and United moved for summary judgment against Nippon. USAir moved for partial summary judgment against Skyway to limit its liability to the amount specified in its air waybill. United moved for summary judgment against Skyway. For the reasons stated, Skyway's motion is granted in part and denied in part. The motions of USAir and United are granted in full.[3]

## DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material

factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994). In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

*1. Admissibility of Wilkins Affidavit*

■ In connection with the motions for summary judgment, Nippon has provided an affidavit from Barry Wilkins, a specialist in losses in manufacturing and distribution. Defendants argue that the Court should not consider the affidavit because the plaintiff indicated in response to interrogatories that it had not retained any experts and that no expert disclosure has been provided. In a sur-reply letter to the Court, plaintiff argued that both its answer to the interrogatories and Rule 26, Fed.R.Civ.P., should only apply at trial.

■ Rule 56(e), Fed.R.Civ.P., requires that, on summary judgment, supporting affidavits be made on personal knowledge,

---

subcontracting carriers, on the ground that the same provisions in Skyway's tariff and the same legal theories were at issue. The parties expressed their desire to postpone defendants' motion for summary judgment in this action until the issuance of this Court's opinion in the other action.

**2.** All claims asserted by and against another defendant, American Protective Services,

were dismissed by stipulation on July 27, 1999.

**3.** With its opposition to defendants' motions, plaintiff Nippon filed a cross-motion for summary judgment. Because plaintiff's motion was untimely under the schedule set at the May 21, 1999 conference, the Court dismissed Nippon's motion by endorsement dated July 20, 1999.

contain admissible evidence, and show that the affiant is competent to testify. Similarly, "[o]n a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). Plaintiff was required to identify any experts in response to the defendants' interrogatories so that any appropriate expert disclosure could be completed before the Court's consideration of the parties' dispositive motion. As a result of the plaintiff's failure to identify Wilkins as an expert, the Court will not consider the Wilkins' affidavit for purposes of the present motion.[4]

### 2. *First and Second Shipments*

█ The legal issues raised by the First and Second Shipments are largely the same as those decided by this Court in *Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc. ("Nippon I")*, 45 F.Supp.2d 288 (S.D.N.Y.1999). Skyway, USAir, and United argue that under *Nippon I*, the liability of each is limited by its limitation of liability clause. United also argues that any claim against it by either Nippon or Skyway is barred by the claim procedure specified in its contract of carriage.[5] In response to the motions for summary judgment, Nippon makes three arguments. Nippon argues first that *Nippon I* was wrongly decided to the extent it barred recovery by the shipper from a subcontracting carrier under principles of tort law. Second, it argues that Skyway is liable since it agreed to assume warehouseman's duties when it elected to store the goods rather than ship them. Finally, Nippon argues that under the material deviation doctrine, Skyway may not assert its limitation of liability clause.

*Nippon I* held, *inter alia*, that

a subcontracting common carrier operating pursuant to its own airbill containing a valid limitation of liability issued to the primary common carrier ... is not liable in tort to the original shipper.

*Nippon I*, 45 F.Supp.2d at 293. In arriving at this holding, the Court gave consideration to the duties of a common carrier, as well as the expectations of both the subcontracting carrier and the shipper. *Id.* at 293–94. None of the authorities now cited by Nippon alter the validity of this holding or its applicability to the present facts.

Nippon once again argues that this case is controlled by the Supreme Court's decision in *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), which held that a carrier's limitation of liability did not extend to stevedores as agents of the carrier. *Nippon I* held that the *Herd* doctrine does not apply to a subcontracting common carrier operating pursuant to its own bill of lading. *Nippon I*, 45 F.Supp.2d at 295–96 (discussing *Herd, Hartford Fire Ins. Co. v. Empresa Ecuatoriana De Aviacion*, 945 F.Supp. 51, 55 (S.D.N.Y.1996), and *Arkwright–Boston Manufacturers Mutual Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 428 (8th Cir.1985)). None of the additional cases cited by Nippon on this motion extends the *Herd* doctrine to a subcontracting common carrier operating pursuant to its own bill of lading. *See, e.g., Toyomenka, Inc. v. S.S. Tosaharu Maru*, 523 F.2d 518, 521 (2d Cir.1975) (independent contractor of a stevedore); *Picker v. Searcher's Detective Agency, Inc.*, 515 F.2d 1316, 1318–19 (D.C.Cir.1975) (non-carrier bailee's agent). Indeed, there are only two additional cases now cited by Nippon that concern the *Herd* doctrine and that also

---

4. Even if the Wilkins affidavit were considered, it would not change the result reached in this Opinion and Order. It addresses solely the material deviation doctrine and adds little beyond the argument that any delay in shipment increases the risk of loss.

5. At oral argument, Skyway conceded that its claim against United was barred by the claim procedure provision.

address a subcontracting carrier's liability, to wit, *Canon USA, Inc. v. Norfolk Southern R.R. Co.*, 936 F.Supp. 968, 971–73 (N.D.Ga.1996), and *New York Marine & General Ins. Co. v. S/S "MING PROSPERITY"*, 920 F.Supp. 416 (S.D.N.Y.1996). *Canon* and *New York* each involves a single "intermodal" or "through" bill of lading that explicitly governed the entire shipment, including all of the subcontracting carriers. *Canon*, 936 F.Supp. at 970; *New York Marine*, 920 F.Supp. at 425. In each case, the subcontracting carrier's liability was therefore appropriately determined from that bill of lading. *Canon*, 936 F.Supp. at 971–73; *New York Marine*, 920 F.Supp. at 427. Neither case addresses the situation in this case or that addressed in *Nippon I*—the liability of a subcontracting carrier that operates pursuant to its own bill of lading.

*Nippon I* was based in part on the duties and expectations of a common carrier shipping pursuant to its own bill of lading. *Nippon I*, 45 F.Supp.2d at 297–98. Those expectations do not exist where, as in *Canon* and *New York Marine*, the subcontracting carrier only has the expectation that its liability is controlled by another carrier's bill of lading. As such, neither *Canon* nor *New York Marine* alters this Court's view of the correctness of its holding in *Nippon I*. As subcontracting carriers shipping pursuant to their own bills of lading, USAir and United cannot be held liable to the original shipper on the First or the Second Shipment under either a contract or tort theory. It bears repeating that the expectations of the shipper are also unaffected by this rule. In shipping with Skyway, it chose to accept a limitation on liability in exchange for a lower rate of shipping. To allow it to recover over that limitation from a subcontracting carrier would provide it with a windfall.

 Nippon also argues that Skyway assumed warehouseman's duties. Nippon does not contest this Court's holding in

*Nippon I* that "storage incidental to carriage is insufficient to convert Skyway into a warehouseman and thereby create a whole new series of duties for it in addition to those in the contract." *Nippon I*, 45 F.Supp.2d at 292. Instead, Nippon argues that under the specific terms of Skyway's tariff, Skyway agreed to assume warehouseman's duties when it held both the First and Second Shipments overnight prior to shipping them via either USAir or United. Nippon relies on the following language in the Skyway tariff: "When freight is placed in storage in Skyway's possession, Skyway's liability shall be reduced to that of a warehouseman." Nonetheless, under the plain language of the tariff, this provision only applies when

> [f]reight [is] held in Skyway's possession by reason of an act or omission of the consignor, consignee or owner, or for custom clearance or inspection, and through no fault of Skyway.

With respect to the First and Second Shipments, none of the conditions that would trigger the imposition of warehouseman's duties have been met. Since Nippon does not argue that any storage by Skyway was anything but "incidental" to the carriage, there is no basis for the imposition of warehouseman duties on Skyway, either in law or under the Skyway tariff.[6] *Nippon I*, 45 F.Supp.2d at 292.

 Nippon further argues that the material deviation doctrine applies to both the First and the Second Shipments. In *Nippon I*, this Court followed *Praxair Inc., v. Mayflower Transit, Inc.*, 919 F.Supp. 650, 655–56 (S.D.N.Y.1996), which stated that

> the case law establishes that in cases of shipment by air, rail, and truck where the shipper paid an additional charge to ensure specialized safety measures to reduce the risk of damage to its cargo, the carrier's failure to perform those very measures which resulted in damage

---

**6.** At oral argument, Nippon conceded that it did not have a warehouseman's duties claim against Skyway based on storage in connection with the shipment.

to the cargo has been found to be a sufficient basis upon which the liability limitation in the shipping agreement may be rescinded.

See *Nippon I*, 45 F.Supp.2d at 292–93. Nippon primarily argues that the "Standard" 2 day delivery term is such a promise and that the failure to deliver the First Shipment and part of the Second Shipment as well as the delay in the Second Shipment constitute material deviations. The request for 2 day delivery—still not Skyway's fastest level of service—does not create an exemption from the limitation of liability. *See, e.g., Hill Constr. Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1319 (1st Cir.1993) (finding doctrine not to apply because of "no breach of a special transport promise" and "no deviation from the kind of thing one might expect to find when a carrier has lost, damaged, or delayed cargo") (internal quotation omitted); *United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1225 (S.D.N.Y.1989) (citing cases upholding validity of limitation of liability with respect to express carriers). None of the cases cited by Nippon are to the contrary.[7] *See, e.g., Coughlin v. TWA*, 847 F.2d 1432, 1433–34 (9th Cir.1988) (breach of special contract provision to carry valuables in cabin) (per curiam); *Nissan Fire & Marines Ins. Co. v. North American Van Lines, Inc.*, No. C–96–03621–VRQ, 1997 WL 81179 (N.D.Cal.1997) (recognizing validity of doctrine, but finding that the number of drivers is not such a safety measure); *Information Control Corp. v. United Airlines Corp.*, 73 Cal.App.3d 630, 641, 140 Cal.Rptr. 877 (1977) (applying doctrine where carrier made promise to place computers on specific flight); *Philco Corp. v. Flying Tiger Line, Inc.*, 18 Mich. App. 206, 171 N.W.2d 16, 24–25 (1969)

(applying doctrine to promise to store computers upright).

Finally, the rule proposed by Nippon would eviscerate the well-established limitation of liability principle. As described by then Judge Breyer, limitation clauses provide a number of benefits, including lower shipping rates for the shipper and avoidance of unforeseeable risks for the carrier. *Hill*, 996 F.2d at 1317. If a material deviation were found here, whenever 2 day delivery is requested and there is loss or delay, the contract of carriage would be rescinded and the carrier would be liable for the full loss. Because any loss would result in the "delay" described by Nippon, the commercial benefits of limitation of liability clauses would be entirely eliminated.

In summary, Nippon does not contest the general enforceability of the limitation of liability provisions contained in the bills of lading, and each of the specific bases for challenging those provisions is without merit. As a result, with respect to the First Shipment, USAir is not liable to Nippon. Skyway and USAir may enforce their limitation of liability clauses. Skyway's liability to Nippon is limited to $432; USAir's liability is limited to Skyway to $432. With respect to the Second Shipment, United is not liable to Nippon. Skyway has also conceded that it has no claim against United. Skyway may enforce its limitation of liability clause; Skyway's liability to Nippon is limited to $97.50.

### 3. Third Shipment

The Third Shipment involves only one carrier—Skyway. Plaintiff does not contest the general validity of the Skyway limitation of liability and instead only argues that shipping the cartons by truck is a material deviation from the terms of the shipment and precludes assertion of the

---

**7.** Nippon also cites several admiralty cases. *See, e.g., Vision Air Flight Service, Inc. v. M/V National Pride*, 155 F.3d 1165 (9th Cir.1998); *Asahi America, Inc. v. M/V Arild Maersk*, 602 F.Supp. 25, 26–27 (1985). The Court does not regard those cases as controlling in a case

involving domestic air carriage. Although the source of the material deviation doctrine is in admiralty, the doctrine has not been imported wholesale and has been given "extremely limited" application in interstate air carriage. *See Nippon I*, 45 F.Supp.2d at 292.

limitation of liability by Skyway. Skyway argues that summary judgment is appropriate because Nippon's claim is untimely under the Skyway tariff, and that it is entitled to assert its limitation of liability.

■ Skyway's argument with respect to the timeliness of the claim is without merit. Skyway argues that under its tariff the claim must have been brought within 12 days under the concealed loss provision quoted above. Nonetheless, the Skyway tariff defines a concealed loss as "that which could not have been noticed at the time of delivery." Skyway does not explain how, in its view, a shortage could constitute a concealed loss under this definition. Importantly, the test for a concealed loss is not that the shortage was not discovered, but that the shortage *could not have been* discovered. A failure to ship the requisite number of cartons is noticeable at the time of delivery. Since the longer 270 day claim period should be applied, Nippon's claim approximately one month after the delivery is timely.

■ The legal basis for the material deviation doctrine was discussed in the previous section. The doctrine applies where there is an additional charge to ensure use of a specialized safety measure to reduce the risk to cargo. *Nippon I*, 45 F.Supp.2d at 292–93. As a threshold matter, there can be little dispute that Toshiba requested and paid for 3S level of service. The definition section of the Skyway tariff defines this level of service as 3–day air freight. Skyway's argument in its brief that it had the discretion to reroute the shipment by truck is without merit. The provision relied on is not applicable to Shipment 3 and instead only applies in three special circumstances not applicable here. Skyway does not argue that the rerouting occurred because of an inability to accommodate a shipment on an aircraft, the unavailability of an aircraft, or an unreasonable delay because of the volume of cargo on hand. As a result, under the terms of the bill of lading, by selecting 3S, Toshiba selected air freight. Further-

more, Skyway does not seriously contest that Toshiba paid an additional amount when it selected 3 day air freight over express truck service. Skyway's rate notices effective in 1995 show that a 100 pound shipment from California to Florida would cost $32 if sent by express truck and $40 if sent 3S.

Because the Court has concluded that Toshiba paid extra for air freight, the only remaining dispute is whether this promise was a special safety-related promise that triggers application of the material deviation doctrine. The only admissible evidence on this issue is testimony from a Vice President of Toshiba that a delay in transport results in an increase in risk. As such, the record simply does not support a "finding [of] transportation-related circumstances that fell outside the range of those in which the parties intended the liability limitation to apply." *Hill*, 996 F.2d at 1319. *See also Barrett Moving & Storage Co. v. All States Air Cargo*, 823 F.Supp. 498, 500–501 (N.D.Ill.1993) (although resting its decision in addition on the terms of the airbill, refusing to apply doctrine to truck shipment and noting lack of evidence of increase in risk because of truck shipment). There is no evidence here of any request by the shipper and agreement by the carrier to treat this particular shipment with special care. The manner of delivery was a standard term to the Skyway bill of lading. Had Nippon wished to escape the limitation of liability provision, it had the option of declaring a value for the shipment and paying the extra shipping charges that would have been imposed. As such, Skyway's motion for partial summary judgment is granted. Skyway's liability on the Third Shipment is limited to $138.

## CONCLUSION

For the reasons stated, Skyway's partial motion for summary judgment is granted. Skyway's liability on the First and Second Shipments is limited to $529.50. With respect to the Third Shipment, Skyway's

liability is limited to $138. USAir's partial motion is granted. USAir is not liable to Nippon and its liability to Skyway is limited to $432. United's motion for summary judgment is granted in full.[8]

SO ORDERED:

---

**8.** This motion disposes of all of the claims asserted in the complaint. This includes the fourth claim for conversion. As stated in *Nippon I*, 45 F.Supp.2d at 292 n. 2, "to assert a claim for conversion successfully, a plaintiff must plead willful or intentional misconduct...." As in *Nippon I*, Nippon has not pleaded such a claim.