**NIPPON FIRE & MARINE INSURANCE CO., LTD.,**
Plaintiff–Appellant,

v.

**SKYWAY FREIGHT SYSTEMS, INC.,**
American International Airways, Inc.;
U.S. Airways, Inc.; and United Airlines, Inc., Defendants–Appellees.

**Docket Nos. 99–7988(L), 99–9482(CON).**

United States Court of Appeals,
Second Circuit.

Argued May 30, 2000.

Decided Dec. 6, 2000.

---

David T. Maloof, Maloof & Browne LLP (Lawrence C. Browne, on the brief), New York, NY, for Plaintiff–Appellant.

Fredric S. Newman, Hoguet Newman & Regal, LLP, New York, NY, for Defendant–Appellee Skyway Freight Systems, Inc.

Mark S. Susina, Adler Murphy & McQuillen, Chicago, IL (Michael G. McQuillen and Paula LoMonaco, Adler Murphy & McQuillen, Chicago, IL; and Paul A. Lange, New York, NY, on the brief), for Defendant–Appellee American International Airways, Inc.

Charles E. Schmidt, Kennedy Lillis Schmidt & English (Matthew T. Loesberg, on the brief), New York, NY, for Defendant–Appellee U.S. Airways, Inc.

David deAndrade, Law Offices of Scott A. Felcher, P.C., New York, NY, for Defendant–Appellee United Airlines, Inc.

Before PARKER, STRAUB, and KATZMANN, Circuit Judges.

STRAUB, Circuit Judge.

In these two consolidated appeals, Plaintiff Nippon Fire & Marine Insurance Co., Ltd. ("Nippon"), the subrogated insurer of Toshiba America Information Systems, Inc. ("Toshiba"), challenges two final judgments of the United States District Court for the Southern District of New York (Denise Cote, *Judge*) granting the defendants' motions for partial summary judgment. The District Court held that Defendant Skyway Freight Systems, Inc. ("Skyway") was liable to Nippon for losses incurred when Skyway carried five shipments of laptop computers for Toshiba in 1997, but that its liability was contractually limited under its contracts with Toshiba, the shipper. The District Court also held that the three secondary carriers with whom Skyway subcontracted to carry four of these shipments—Defendants American International Airways, Inc. ("AIA"), United Airlines, Inc. ("United"), and U.S. Airways, Inc. ("USAir")—were not directly liable in tort to the plaintiff at all.

Skyway and AIA have now filed in bankruptcy for liquidation and reorganization, respectively, and as a result, a number of the claims in this appeal automatically have been stayed under the bankruptcy laws. The parties have stipulated to dismissal of these claims, and with respect to the non-stayed claims that properly remain before us, we affirm the District Court's conclusion that the secondary carriers were not directly liable to the plaintiff in tort.

## BACKGROUND

### I. Factual Background

These two actions arise from five shipments of computer equipment pursuant to shipping contracts between Toshiba and Skyway. Toshiba suffered losses as a result of these shipments having been lost or not delivered complete to Toshiba's consignees in New Jersey and Florida. Nippon was Toshiba's insurer for cargo losses and, having compensated Toshiba for these losses, brought these two actions as Toshiba's subrogee.

#### A. *Nippon I*

Under the first set of shipments considered by the District Court, Skyway agreed to carry a shipment of 50 laptop computers on Monday, September 8, 1997, and a second shipment of 146 laptops on Tuesday, September 9, 1997. The shipments were to be picked up from Toshiba in California and delivered to Toshiba's consignee in New Jersey. Both shipments were designated as being shipped by air on "3S," or standard three-day air terms, which provide for delivery on the third business day after pickup. The air waybills provided that the shipments would be governed by a standard tariff provision limiting Skyway's

liability to the "declared value" of the shipment. Skyway's tariff defines "declared value" to be the higher of either 50 cents per pound or $50.00, unless the shipper declares a higher value—which results in an extra charge of 75 cents for every $100.00 above the default declared value. Toshiba declined to declare a higher value for either shipment, but it declared the weight of the first shipment to be 600 pounds and the second shipment to be 1,606 pounds.

Without consulting or notifying Toshiba, Skyway elected to subcontract these shipments to Defendant AIA. AIA issued air waybills to Skyway that incorporated a tariff rule—similar to Skyway's—expressly limiting liability to 50 cents per pound unless a higher value is declared. Skyway did not declare a higher value for the shipment. AIA was to hold the shipments for pickup by Skyway in Philadelphia. As agreed upon by Toshiba and Skyway, the two shipments were picked up by Skyway on Monday, September 8, and Tuesday, September 9, 1997. AIA carried both shipments by air to Philadelphia, where they arrived on Thursday morning, September 11th. Nippon and AIA contend that Skyway was notified several times that these shipments had arrived in Philadelphia but did not attempt to retrieve these shipments from AIA's airport warehouse until the afternoon of Monday, September 15th. Skyway disputes this assertion, claiming that it first attempted to retrieve the shipments during the afternoon of Friday, September 12th, but that AIA refused to remain open long enough for the Skyway driver to do so.

On Tuesday, September 16th, Skyway informed Toshiba and the local police that part of the first shipment (20 of the 50 laptops) and all of the second shipment were missing. Nippon asserts that law enforcement officials "believe that the computers were converted by AIA's employees," and that a criminal investigation of these employees was underway. The losses incurred by Toshiba totaled approximately $388,000.00.

## B. *Nippon II*

Under the second set of shipping contracts between Toshiba and Skyway, Skyway agreed to carry three shipments of laptop computers from Irvine, California, to Toshiba's consignees in New Jersey and Florida. The bills of lading again provided that the shipments would be governed by a standard tariff provision limiting Skyway's liability to the "declared value" of the shipment. As in *Nippon I,* Skyway's tariff defines "declared value" to be the higher of either 50 cents per pound or $50.00, unless the shipper declares a higher value and pays an additional 75 cents for every $100.00 above the default declared value of $50.00. Toshiba shipped the first shipment, consisting of 54 cartons of data processing machines, on January 28, 1997, on "SS," or "standard two day service" terms. Toshiba did not declare a value for this shipment on the waybill, but declared a weight of 864 pounds. Skyway subcontracted this shipment to Defendant USAir. USAir issued to Skyway its own waybill, which incorporated a tariff provision limiting liability to 50 cents per pound unless a higher value is declared. Like Toshiba, Skyway did not declare a higher value on the USAir waybill but declared that the shipment weighed 939 pounds. While the shipment was to have left Los Angeles on January 29, 1997, it apparently did not leave Los Angeles until February 4, 1997, and was never delivered to Skyway or Toshiba's New Jersey consignee.

The second shipment, consisting of 25 cartons of data processing machines, was shipped on February 28, 1997, on the same "SS" terms to the same New Jersey consignee. Toshiba again did not declare any value for the shipment, but declared a weight of 375 pounds. Skyway again subcontracted the shipment, this time using the "general freight" service of Defendant United. The waybill issued by United also limited liability to 50 cents per pound un-

less a higher value is declared, and Skyway did not declare any value for the shipment. Toshiba's shipment was combined into a larger shipment totaling 1095 pounds. The waybill also indicated that all claims must be made within nine months and nine days of the date of acceptance. Only 12 of Toshiba's 25 cartons were delivered on March 4, 1997; Skyway did not present any claim to United for the lost cartons.

The third shipment of 33 cartons of data processing machines was shipped by Toshiba to a California consignee on July 31, 1997. The shipment was made on "3S," or standard three-day delivery terms. Toshiba again did not declare any value, but declared a weight of 396 pounds. This time, Skyway shipped the cartons by truck, rather than air, and delivered only 23 of the 33 cartons on August 6, 1997. Skyway did not receive any report of a shortage for the undelivered cartons until September 12, 1997. The losses incurred by Toshiba for the three shipments totaled approximately $360,000.00.

For all five shipments, Skyway compensated Toshiba for its losses based on the declared weight of each shipment, pursuant to the limitations of liability in the Skyway's tariff, since Toshiba had not declared a value for any of the five shipments.

## II. Procedural History

After reimbursing Toshiba for these losses, Nippon filed two actions seeking compensation from the defendants in connection with the two sets of shipments. The first action (*Nippon I*), filed June 24, 1998 against Skyway and AIA, alleged (1) breach of contract and federal common law duties; (2) negligent damage to property; (3) breach of bailment and warehouseman's obligations; and (4) conversion in connection with the two September 1997 shipments. While the complaint originally sought recovery from AIA on all four theories, Nippon subsequently dropped its contract claim against AIA. Skyway cross-

claimed against AIA seeking indemnification. In considering the parties' motions and cross-motions for summary judgment, the District Court held that Skyway was liable to Nippon for loss of shipments, but that its liability was limited to $923.00 on account of the contractual limitation of liability, and that AIA, as a secondary common carrier, was not liable in tort to Nippon at all. The Court also upheld the contractual limitation of liability in the waybill issued by AIA to Skyway, and accordingly limited AIA's obligation to pay damages to Skyway to $923.00. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.,* 45 F.Supp.2d 288 (S.D.N.Y.1999) ("*Nippon I*"). Following the District Court's decision, Skyway and AIA stipulated to withdrawal of Skyway's cross-claim against AIA with prejudice, subject to reinstatement if the District Court's decision were subsequently vacated, modified, or reversed so as to hold Skyway liable to Nippon for more than $923.00. The District Court approved and endorsed that stipulation on July 26, 1999, and entered final judgment in *Nippon I* on July 27, 1999.

The second action (*Nippon II*), filed September 24, 1998 against Skyway, United, and USAir in connection with the January, February, and July 1997 shipments, alleged breach of contract against Skyway and negligence, breach of bailment obligations, breach of warehouseman's obligations, and conversion against Skyway, United, and USAir. Skyway cross-claimed for indemnification against USAir and United, and United cross-claimed for indemnification against Skyway and USAir. In considering the parties' motions and cross-motions for summary judgment, the District Court again held that Skyway was liable to Nippon for the losses, but that its liability for the three shipments was contractually limited to $432.00, $97.50, and $138.00, respectively; and that the secondary common carriers, United and USAir, were not liable in tort to Nippon at all. *See Nippon Fire & Marine Ins. Co. v.*

*Skyway Freight Sys., Inc.*, 67 F.Supp.2d 293 (S.D.N.Y.1999) ("*Nippon II*"). Following the District Court's decision, Skyway and USAir stipulated to withdrawal of Skyway's cross-claim against USAir with prejudice, subject to reinstatement if the District Court's decision were subsequently vacated, modified, or reversed so as to hold Skyway liable to Nippon for more than $432.00. The District Court approved and endorsed that stipulation on November 1, 1999, and entered final judgment in *Nippon II* on November 23, 1999.

These timely appeals followed. After the notices of appeal had been filed, Skyway filed in bankruptcy for liquidation (Chapter 7) and AIA filed in bankruptcy for reorganization (Chapter 11). As a result, all claims and cross-claims against Skyway and AIA were automatically stayed by operation of 11 U.S.C. § 362(a). In light of the automatic bankruptcy stay, the parties stipulated to voluntary dismissal, with prejudice and without costs to any party, of (1) Nippon's claims and United's cross-claims against Skyway and (2) United's cross-claim against USAir in *Nippon II*. The parties also stipulated to voluntary dismissal, without prejudice to reinstatement and without costs to any party, of Nippon's claims against Skyway and AIA in *Nippon I*. We approved and endorsed the stipulation in *Nippon II* on May 18, 2000, and the stipulation in *Nippon I* on November 30, 2000, and thereby have dismissed these claims.[1] Nippon's claims against United and USAir, however, remain before us. These remaining claims are not subject to the automatic stay and properly may go forward. *See Teachers Ins. v. Butler*, 803 F.2d 61, 65 (2d Cir.1986) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

## DISCUSSION

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. *See Bogan v. Hodgkins*, 166 F.3d 509, 511 (2d Cir.), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Very few of the material facts in this case are disputed; rather, the parties' disputes center primarily around conflicting interpretations of the law.

On appeal, Nippon argues that the secondary carriers, United and USAir, should be held directly liable in tort to Nippon for its losses. United and USAir counter that Nippon may not assert any tort claims against them, but is limited to claims sounding in contract. If there is to be recovery on these contractual claims, the secondary carriers further assert, that recovery must be limited by the liability limitation provisions in their shipping contracts with Skyway. Nippon responds that while the secondary carriers might be able to assert those liability limitation clauses against Skyway, they may not do so against Nippon. We agree with the secondary carriers that Nippon is limited to contractual relief, and since Nippon does not assert any contract claims against the secondary carriers, we affirm the District Court's conclusion that United and USAir are not liable to Nippon at all.

---

**1.** Since Nippon's claims against Skyway have been dismissed, we do not address Nippon's arguments that the District Court erred by (1) refusing to consider the testimony of its expert witness in support of its claims against Skyway, and (2) refusing to apply the "material deviation" doctrine, *see Nippon I*, 45

F.Supp.2d at 292–93; *Nippon II*, 67 F.Supp.2d at 299–300; *see generally Hill Constr. Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir.1993), to invalidate the limitation of liability in the shipping contracts between Toshiba and Skyway.

## A. Applicable Law

■ Prior to enactment of the Airline Deregulation Act of 1978 ("ADA"), 92 Stat. 1705, it had been clearly established that actions against interstate air carriers for lost or damaged shipments were governed by federal common law. *See generally Read–Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195–99 (9th Cir.1999); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926–29 (5th Cir. 1997); *see also Insurance Co. of North America v. Federal Express Corp.*, 189 F.3d 914, 924–27 (9th Cir.1999) (W. Fletcher, J., concurring). This Court has not explicitly stated whether federal common law continues to govern such actions following enactment of the ADA. *See Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 708 n. 1 (2d Cir.1990) (declining to address whether federal common law or state law governs action seeking damages for lost air shipment in situation in which Warsaw Convention does not apply); *Ruston Gas Turbines, Inc. v. Pan American World Airways*, 757 F.2d 29, 30 (2d Cir.1985) (stating that "[d]eregulation of certain common carriers returns us to the common law," but not stating explicitly whether that common law is state or federal). Other courts, however, have held that federal common law continues to govern actions against air carriers for lost or damaged interstate shipments. *See Read–Rite Corp.*, 186 F.3d at 1195–99; *Sam L. Majors Jewelers*, 117 F.3d at 928–29; *Arkwright–Boston Manufacturers Mutual*

*Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 427 (8th Cir.1985); *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1119–22 (3d Cir.1984); *Owens–Corning Fiberglas Corp. v. U.S. Air*, 853 F.Supp. 656, 664–65 (E.D.N.Y.1994); *United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1223–26 (S.D.N.Y.1989). We agree with those courts and hold that federal common law continues to control the issue of liability of air carriers for lost or damaged shipments even after deregulation.[2]

## B. Effect of the Secondary Carriers' Contractual Limitations of Liability

■ Under the federal common law rules governing common carriers, contractual provisions that purport to relieve carriers from liability for loss or damage to cargo altogether are invalid and unenforceable as against public policy. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 509, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Shippers Nat'l Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 746 (2d Cir. 1983). However, under the "released value" doctrine, contractual provisions that merely limit carrier liability for lost or damaged cargo—such as those incorporated into the air waybills in this case—ordinarily are valid and enforceable so long as they (1) are set forth in a "reasonably communicative" form, so as to result in a "fair, open, just and reasonable agreement" between carrier and shipper; and (2) offer the shipper a possibility of higher

---

2. Since we conclude that this case arises under federal common law, federal jurisdiction over this case is properly based on 28 U.S.C. § 1331, which "support[s] claims founded upon federal common law as well as those of a statutory origin." *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926 (5th Cir.1997) (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)). Even if federal common law did not control the question of the defendants' liability, however, federal jurisdiction would remain available under 28 U.S.C. § 1332(a)(2). The $75,000 amount-in-controversy requirement has been met in each action, and Nippon, the only plaintiff in either action, is

incorporated under Japanese law and has its principal place of business in Tokyo, making it a "citizen[ ] or subject[ ] of a foreign state" for purposes of diversity/alienage jurisdiction. 28 U.S.C. § 1332(a)(2); *see Matimak Trading Co. v. Khalily*, 118 F.3d 76, 79 (2d Cir.1997) (citing *National Steamship Co. v. Tugman*, 106 U.S. 118, 121, 1 S.Ct. 58, 27 L.Ed. 87 (1882)), *cert. denied*, 522 U.S. 1091, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998). The defendants—Skyway, AIA, USAir, and United—all are incorporated (respectively, in California, Michigan, Delaware, and Delaware) and have their principal places of business (respectively, in California, Michigan, Virginia, and Illinois) in the United States.

recovery by paying the carrier a higher rate. *Hill Constr. Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993); *Shippers Nat'l Freight Claim Council*, 712 F.2d at 746.

 The released value doctrine, which dates back to the earliest cases at common law governing railroads, *see, e.g., Hart v. Pennsylvania R.R.*, 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884), subsequently has been extended by statute and common law to common carriers of every stripe, including air carriers both before and after deregulation. *See, e.g., Hill Constr. Corp.*, 996 F.2d at 1317 (citing cases and statutes); *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir.1987) (under federal common law, released value doctrine applies to air carriers). A valid limitation of liability clause governs "not only the nature and extent of [the carrier's] liability, but also the nature and extent of the shipper's right of recovery." *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978). Such clauses, therefore, limit recovery not only for breach of contract, but also based on other legal theories, including negligence, bailment, or conversion. *See Owens–Corning Fiberglas Corp.*, 853 F.Supp. at 665–66 (valid limitation of liability clause also applies to claims sounding in tort); *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145, 1148 (N.D.Ill. 1985) (holding that "[w]here ... it is clear plaintiffs seek damages for breach of the carriage contract ... [t]hey must proceed, if at all, on a breach of contract theory," and the contractual limitation of liability applies if otherwise valid); 3 SAUL SORKIN, GOODS IN TRANSIT § 13.07[1], at 13–123 & n. 27 (1976 & Supp. 1998) (contractual limitations of liability "may not be avoided by framing the complaint in terms of bailment or tort"). Moreover, the fact that an air carrier temporarily may have stored the goods does not render the carrier a ware-

houseman, subject to common law warehouseman's duties, so long as the storage was only temporary and incidental to the primary goal of interstate shipment. *See Owens–Corning Fiberglas Corp.*, 853 F.Supp. at 666; *Baloise Ins. Co. v. United Airlines, Inc.*, 723 F.Supp. 195, 199 (S.D.N.Y.1989) (carrier should not be treated as a warehouseman "simply because it stores goods temporarily in a warehouse facility prior to transport").

 The original shipping contracts between Toshiba and Skyway contained provisions limiting Skyway's liability to the greater of either 50 cents per pound or $50.00. While Toshiba had the option of declaring a higher value for its shipments and paying Skyway a correspondingly higher rate, it elected not to do so. Nippon argues that even if those liability limitations in the Toshiba Skyway shipping contracts were valid, USAir and United may not avail themselves of those provisions, since the original contract between Toshiba and Skyway lacked a "Himalaya clause,"[3] which would have explicitly extended the protective clauses of the primary contract to third parties, such as agents and subcontractors. Nippon argues that this question is controlled by the Supreme Court's decision in *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 302–303, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), a maritime case holding that under the Carriage of Goods by Sea Act of 1936 ("COGSA"), 46 U.S.C. §§ 1300–15, a secondary carrier may not claim the benefit of the primary carrier's contractual limitation of liability unless the contract contains language akin to a "Himalaya clause."

USAir and United, however, do not seek to benefit from the liability limitation in the Toshiba–Skyway contracts. Instead, they assert the independent validity of the limitations of liability in their *own* respective contracts with Skyway—which, they

---

**3.** The use of this label derives from the case of *Adler v. Dickson*, [1955] 1 Q.B. 158, which involved the steamship "Himalaya." *See* 3 SAUL SORKIN, GOODS IN TRANSIT § 14.15[1], at 14–85 (1976 & Supp. 1999).

claim, preclude both Skyway *and* Nippon from asserting non-contractual claims against the secondary carriers. The District Court agreed with defendants, distinguishing *Herd* and cases following its rule as inapplicable in light of the valid limitations of liability in their own contracts with Skyway. *Nippon II*, 67 F.Supp.2d at 298–301.

We agree with the District Court's well-reasoned analysis of this issue. Application of the *Herd* principle does not help Nippon in this case, since the shipping contracts between Skyway and the secondary carriers contain their own valid limitations of liability. The District Court noted in *Nippon I* that common carriers are entitled to assume "that one presenting goods for shipment either owns them or has authority to ship them." *Nippon I*, 45 F.Supp.2d at 293 (quoting *Puerto Rico Maritime Shipping Auth. v. Crowley Towing & Transportation Co.*, 747 F.2d 803, 804 (1st Cir.1984)); *see also ICC v. Delaware, L. & W. R.R. Co.*, 220 U.S. 235, 252, 31 S.Ct. 392, 55 L.Ed. 448 (1911); *Nippon II*, 67 F.Supp.2d at 298–99; *Atlantic Mutual Ins. Co. v. M/V President Tyler*, 765 F.Supp. 815, 818 n. 3 (S.D.N.Y. 1990) ("Absent special circumstances, the risk that the individual presenting the goods for shipment is unauthorized is better borne by the actual owner of the goods than a common carrier."). Indeed, as common carriers, USAir and United were not even permitted to scrutinize ownership of the cargo before deciding to accept the shipments from Skyway—unlike private carriers, common carriers lack "the power to sit in judgment on the title of the prospective shipper who has tendered the goods for transportation." *Nippon I*, 45 F.Supp.2d at 293 (quoting *ICC v. Delaware, L. & W. R.R. Co.*, 220 U.S. at 252, 31 S.Ct. 392); *see also Chicago, Milwaukee, St. Paul & Pac. R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 487, 69 S.Ct. 692, 93 L.Ed. 817(1949) (when shipping goods tendered by freight forwarder, "the carrier is not concerned with questions of ownership, but must treat the forwarder as shipper"). In this context, the District Court properly distinguished the cases cited by Nippon that apply the *Herd* principle—either because they involve private, rather than common carriers, *see Arkwright–Boston Manufacturers Mutual Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 426 (8th Cir.1985), or because the secondary carriers in those cases did not have their own waybills containing valid limitations of liability, *see, e.g., id.; Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion*, 945 F.Supp. 51, 55 (S.D.N.Y.1996), *aff'd*, 122 F.3d 1056 (2d Cir.1997) (table).

Nippon does not dispute the validity of the liability limitations in the air waybills between Skyway and the secondary carriers with which it subcontracted the Toshiba shipments. Rather, Nippon argues that since Skyway was not authorized to subcontract the shipments, the secondary carriers should not be permitted to "lawfully bind [Toshiba] to some unknown terms." In at least two respects, however, Nippon's argument misunderstands its relationship to the secondary carriers under federal common law. First, Nippon cannot avoid the liability limitations in the secondary carriers' shipping contracts by framing its claims in tort. It is well-established that a shipper may sue a secondary carrier of its goods for any loss or damage that may be caused by those carriers. However, such actions have always had their basis in *contract*— the theory being that the shipper is either a disclosed or undisclosed principal of its agent, the primary carrier. *See Acme Fast Freight*, 336 U.S. at 487 n. 27, 69 S.Ct. 692; *Great Northern R. Co.*, 232 U.S. at 514–15, 34 S.Ct. 380; *see also Gibson v. Greyhound Bus Lines, Inc.*, 409 F.Supp. 321, 325 (M.D.Fla.1976) (for a common carrier, "[t]he duty of due care grows out of the contract of carriage and breach of that duty gives rise to" a cause of action sounding in contract). In this case, Toshiba was the undisclosed principal of its agent, Sky-

way. As a result, Toshiba's subrogee, Nippon, is subject to the ordinary federal common law rule that limitation of liability provisions in shipping contracts "may not be avoided by framing the complaint in terms of bailment or tort."[4] 3 SAUL SORKIN, GOODS IN TRANSIT § 13.07[1], at 13–123 & n. 27 (1976 & Supp. 1998).

Second, on the facts of this case, the terms to which Toshiba is bound under Skyway's shipping contracts with United and USAir were *not* "unknown." Toshiba's expectations were in no way frustrated by Skyway's decision to subcontract its shipments, since the scope of the liability limitations agreed to between Skyway and its secondary carriers was exactly the same as that agreed to between Toshiba and Skyway.[5] *See Nippon I*, 45 F.Supp.2d at 294 & n. 4; *Nippon II*, 67 F.Supp.2d at 299. Any argument that Skyway exceeded its authority by subcontracting the shipment must, necessarily, be directed at Skyway alone—as common carriers, United and USAir were obliged to treat Skyway as a shipper when it tendered Toshiba's goods to them for shipment. *See Great Northern R. Co. v. O'Connor*, 232 U.S. 508, 514–15, 34 S.Ct. 380, 58 L.Ed. 703 (1914) (stating that "[i]f there was any undervaluation, wrongful classification or violation of [the shipper's] instructions, resulting in damage, the [shipper] has her

remedy against" the primary carrier, not the secondary carrier); *Burnell v. Butler Moving & Storage*, 826 F.Supp. 65, 68 (N.D.N.Y.1993).

Therefore, since Nippon does not assert any contract claims against the secondary carriers, it has not alleged a valid basis of recovery against these defendants.

## CONCLUSION

We hold that USAir and United are not liable in tort for the losses resulting from the shipments in this case, and we therefore AFFIRM the District Court's judgment as to Nippon's claims against USAir and United in *Nippon II*. All other claims in these appeals have been dismissed, following the parties' stipulations, by our orders of May 18, 2000, and November 30, 2000.

---

**4.** We need not definitively resolve whether other circumstances might exist in which secondary carriers may be held liable to shippers in tort, for the facts of this case—in which United and USAir had no duty to Toshiba—do not present any such circumstance. From the perspective of the secondary carriers, Nippon is an unforeseeable plaintiff, since the carriers accepted the goods for shipment from Skyway, not from Nippon's subrogor Toshiba. As discussed above, the secondary carriers were entitled—and indeed, obligated—as common carriers to assume that Skyway either owned the goods to be shipped or had authority to ship them. *See Nippon I*, 45 F.Supp.2d at 293–94; *see also Hampton v. Federal Express Corp.*, 917 F.2d 1119, 1125–26 (8th Cir.1990) (holding that carrier was not liable in tort since it could not reasonably

foresee any injury to the plaintiff). Notwithstanding their contractual obligations to Skyway, the secondary carriers therefore did not have *any* duty to Toshiba, and Nippon has not advanced any argument as to why we should recognize a duty by the secondary carriers to a party of which it had no knowledge and to whom injury could not reasonably have been foreseen.

**5.** Like the District Court, we express no view as to whether the shipper has "any additional rights" against secondary carriers when the secondary carriers' shipping contracts contain *higher* damage limitations than the original agreement between the shipper and the primary carrier. *Nippon I*, 45 F.Supp.2d at 294 n. 4.